**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAMON LANDOR,** | : | |
| | : | |
| **Plaintiff** | : | **Civil No. 1:11-CV-759** |
| | : | |
| **v.** | : | **(Judge Caldwell)** |
| | : | |
| **B.A. BLEDSOE, Warden;** | : | **(Magistrate Judge Carlson)** |
| **B. TRATE, Captain; and** | : | |
| **LT. HEPNER,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

This case comes before us in a challenging procedural posture, a procedural posture created by the Plaintiff, who filed this action, but has now declined for almost six months to respond in a meaningful way to a defense motion to dismiss, or for summary judgment.  Because we find that Landor cannot simply decline to respond to this motion, and further find that the Defendants are entitled to a judgment in their favor on many of Landor's claims, we recommend that this defense motion be granted.

This is a <u>Bivens</u>[1] action brought by Damon Landor, an inmate in the Special Management Unit at the United States Penitentiary at Lewisburg ("USP-Lewisburg"). In his amended complaint, Landor alleges that Warden B.A. Bledsoe, Captain Trate, and Lieutenant Hepner at USP-Lewisburg subjected him to unlawful excessive force in July 2010, by having him removed from his prison cell and placed in ambulatory restraints for a period of five days after the Plaintiff was found to have become non-compliant and threatening to prison staff. Specifically, Landor claims that the Defendants are liable for authorizing him to be removed from his cell with force and using ambulatory restraints against him between July 5, 2010, and July 10, 2010, after he refused orders to remove his arm from the food slot that he was obstructing, and after he threatened to throw feces on any staff member who came near his cell.

Defendants moved for dismissal or summary judgment on Plaintiff's claims nearly half a year ago, on October 27, 2011, and served Plaintiff with their statement of material facts and brief in support of the motion on November 10, 2011. (Docs. 33, 39, 40) The Court entered an order directing Landor to file a responsive brief by December 8, 2011. (Doc. 43) Landor failed to respond by this date, but later

---

[1] <u>Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388, 397 (1971) (a citizen suffering a compensable constitutional injury may invoke federal question jurisdiction to seek an award of monetary damages against federal agent).

informed the Court that he was "having problems with the administration" at the prison, and claimed that in late November 2011, prison officials confiscated his legal materials and other property, thereby rendering him unable to respond to the motion. (Doc. 45) In response, the Court entered an order directing the Defendants to provide Landor with additional copies of the motion, brief, and statement of facts by January 6, 2012, and directed Landor to file a responsive brief by January 31, 2012. (Doc. 49) Landor was served with these documents a second time on January 5, 2012. (Doc. 50)

On January 24, 2012, Landor moved for an extension of time to respond to the motion, and the Court directed the Plaintiff to respond on or before February 14, 2012. (Docs. 52, 53) On February 6, 2012, the Court again enlarged Landor's response deadline to February 27, 2012, and directed the Defendants to make inquiries to ensure that the Plaintiff had been given access to legal materials consistent with the security needs of the prison. (Doc. 55)

After Landor again failed to file a response in accordance with the Court's orders, we entered an order directing the Defendants to file a document with the Court explaining whether Landor had been given access to his legal materials, consistent with the security needs of the prison, since entry of the February 6, 2012 order. (Doc. 58) Defendants timely responded, and informed the Court that although Landor's

3

personal property had been removed from his cell on January 27, 2012, as part of an official investigation, it had been returned to him on February 7, 2012.  (Doc. 59) Furthermore, the Defendants reported that Landor spent 14.6 hours in the prison law library since December 1, 2011, including four hours on January 27, 2012, two and one-half hours on January 31, 2012, and more than three and one-half hours on February 22, 2012.  (Id.)

Despite having had notice of the Defendants' dispositive motion since November 2011, and despite having had access to his legal materials and the ability to conduct legal research in the prison law library for several months, the Plaintiff has failed to file a brief in response to the motion.  Upon consideration, we conclude that notwithstanding the brief period when he was deprived of his legal materials, Landor has by now had sufficient time and opportunity to file a response, and he has unreasonably failed to do so.  Accordingly, we now find it appropriate to consider the motion as filed, and will recommend that the District Court grant the motion and close the case.

III.   **FACTUAL BACKGROUND**[2]

Damon Landor was convicted in the Eastern District of Louisiana of trafficking cocaine, and was sentenced to serve a 120-month prison term with an eight-year period of supervised release to follow.  (SMF ¶ 1.)  Landor is projected to be released from federal custody on August 16, 2013.  (Id. ¶ 2.)  Landor is presently incarcerated in the SMU at USP-Lewisburg where he has been held since May 11, 2010, following his transfer from the United States Penitentiary in McCreary, Kentucky.  (Id. ¶ 3.)

On July 5, 2010, Landor was found to have become disruptive in his cell in USP-Lewisburg's D-Block Unit, when he refused to remove his arm from the food tray slot on his door, and refused to allow staff to close and secure the tray slot.  (Id. ¶ 4.)  In response, Lieutenant Hepner spoke with Landor about his refusal to remove his arm, and gave him several orders to comply with orders to discontinue blocking

---

[2]   The factual background set forth in this report is taken principally from Defendants' uncontested statement of material facts submitted pursuant to Local Rule 56.1 in support of their motion for summary judgment.  (Doc. 39, Defendants' Statement of Facts) ("SMF").  In their thorough submissions, Defendants have attached voluminous documents in support of the statement of facts, which we have reviewed to ensure that the factual representations are supported with evidence.  For simplicity, we have generally declined to cite in this report to each piece of evidence that the Defendants have identified and offered in support of their factual assertions, but instead have in most instances cited only to the relevant paragraphs contained within the statement of material facts itself.

his food tray.  (Id. ¶ 5.)  Landor refused to comply with Lieutenant Hepner's orders. (Id.)

Following this incident and Landor's persistent refusal to follow instructions from Lieutenant Hepner, Warden Bledsoe was informed about the situation, and the warden authorized a use of force team to be assembled to remove Landor from his cell and have him placed in ambulatory restraints.  (Id. ¶ 6.)  Pursuant to this authorization, a use of force team was assembled at 1:00 p.m.  (Id. ¶ 8.)  The use of force procedure was video recorded.[3]  (Id. ¶ 9.)  Before the use of force team entered Landor's cell, Lieutenant Hepner made the following recorded statement, which puts into context the truculent behavior that led to the use of force team's assembly, and indicated what the use of force team could expect to find upon entry:

> My name is Lieutenant James Hepner.  The date is July 5, 2010.  The time is now 1:00 p.m.  We are currently in the Special Management Unit, specifically Dog-Block USP Lewisburg as a result of inmate Damon Landor, Reg. No. 28711-034, engaging in disruptive behavior and displaying signs of imminent violence.  Specifically, at approximately 12:00 p.m., Dog-Block staff were collecting food trays from the noon meal when inmate Landor, who is housed in  Dog-Block cell 201.  Upon handing out the food trays, Inmate Landor refused to allow the staff to secure the food tray slot by placing his arm through the slot.  I spoke with Inmate Landor immediately after this occurred.  He refused to allow me to secure the food tray slot and stated that he would start throwing items at staff if they walk on the range.  Inmate Landor

---

[3] Defendants have provided the Court a copy of the video recording under seal in connection with their motion for summary judgment.

was extremely agitated and verbally aggressive while I was speaking with him.  Inmate Landor is a 31-year-old black male with SEG assignments of assaulting police officers.  He has an extensive disciplinary history to include assaults, refusing orders, insolence toward staff, possessing dangerous weapons and threatening bodily harm.  He is an in-custody, high-security inmate. . . .

Warden Bledsoe has been briefed on the situation and has given orders to assemble a use-of-force team to place Inmate Landor in ambulatory restraints due to his disruptive behavior and displaying signs of imminent violence towards staff. The Warden has also authorized the use of low-impact foam baton rounds by way of a L-8 35 mm launcher to be dispensed against inmates Landor and [name omitted] if they do not comply with staff orders to submit to restraints.  Chemical agents will not be utilized due to Inmate  [name omitted] being asthmatic.  It is expected that Inmate  [name omitted] will comply with staff orders and submit to restraints in order for Inmate Landor to be removed from the cell.  But if Inmate [name omitted] does not comply with staff orders, the Warden has authorized his placement into ambulatory restraints also.

(Id. ¶ 10.)

Thereafter, during a process of confrontation avoidance initiated by the use of force team, Landor submitted to restraints, was removed from cell 201, and was escorted to the shower area on the second floor of the unit where he was visually searched, scanned with a metal detector, and placed in new clothing.  (Id. ¶ 11.) Landor was placed into ambulatory restraints at approximately 1:10 p.m., and escorted to Cell 118.  (Id. ¶ 12.)  As a result of his aggressive behavior, Landor remained in the ambulatory restraints until 6:00 p.m. on July 10, 2010.  (Id. ¶ 13.) The Defendants have submitted reports of corrections officers who conducted regular

inspections of Landor to ensure that his health or safety was not impaired by the use of the ambulatory restraints. These reports typically show that Landor was belligerent and intemperate with USP-Lewisburg staff during this time, repeatedly cursing at them or threatening to harm them if they did not leave his cell. (Doc. 39, Ex. 1, Attach. 2 and 3)

As a result of this incident, and Landor's disruptive conduct that led to it, Defendant Hepner issued an incident report on July 5, 2010, charging Landor with the offenses of blocking a locking device, refusing an order, and threatening bodily harm to staff. (Id. ¶ 14; Doc. 39, Attach. 1, Report of Incident.) The Disciplinary Hearing Officer ("DHO") conducted a hearing on September 1, 2010, on these charges. During the hearing, Landor generally denied that he said anything to Lieutenant Hepner, or that he stuck his arm out of the food tray. (Id. ¶ 15.)

The DHO expunged the charge for threatening bodily harm after finding it to be duplicitous of other charges, but found that Landor had committed the violations of blocking a locking device and refusing an order. (Id. ¶ 16.) In his decision, the DHO considered Defendant Hepner's statement in the incident report, which the DHO paraphrased as follows:

> On 7/5/10 a 10:00 p.m. D-Block staff were attempting to retrieve the noon meal trays from LANDOR in cell 201. LANDOR placed his arm through the food tray slot. I immediately spoke with LANDOR and

> gave him several orders to remove his arm which he refused.  LANDOR then threatened violence towards staff by stating , "I'm going to start throwing shit at your people if you don't take care of this problem right now."

(Id. ¶ 17.)  In addition, the DHO considered Defendant Hepner's memorandum, which provided that:

> On July 5, 2010, at approximately 12:00 p.m., inmate Damon Landor, Reg. No. 28711-034 became disruptive while in his cell in D Unit. Specifically, inmate Landor refused to remove his arm from the food slot with negative results.  Inmate Landor displayed signs of violence by stating he would assault any officer that came near his cell. [Another inmate] was in the cell but was compliant.  Due to inmate Landor's refusal of staff's orders as well as his display of imminent violence, the Warden was notified and authorized a use of force team to be assembled to place inmate Landor in ambulatory restraints.  At approximately 1:00 p.m., a use of force team was assembled and confrontation avoidance procedures were initiated with positive results.  Inmate Landor was removed from cell 201 and escorted to the second floor shower.  Inmate Landor was visually searched, placed in new clothes and placed in ambulatory restraints.  He was escorted to cell 118 and placed inside without further incident.  Inmate Landor sustained no injuries.  No staff injuries were reported.

(Id. ¶ 18.)  In his decision concluding that Landor had committed the violations of blocking a locking device and refusing to obey an order, the DHO stated:

> The DHO believed the information provided by the staff members involved in this case, as they derived no known benefit by providing false information.  Inmate LANDOR's actions during this incident initiated his placement into restraints for his hostile and disruptive behavior, and thus supporting the misconduct of codes 203 and 208.

(Id. ¶ 19.)  In addition, the DHO observed that the incident on July 5, 2010, was Landor's fourth offense of a Code 208 violation of refusing an order.  (Id. ¶ 20.)

Finding the Landor had violated Code 203 and 208, the DHO imposed sanctions for each violation.  For violating Code 203, the DHO sanctioned Landor to: (a) 30 days disciplinary segregation; (b) disallowance of 27 days of good conduct time; and (c) impoundment of personal property for two months.  (Id.)  For the Code 208 violation, the DHO sanctioned Landor to: (a) 60 days disciplinary segregation; (b) disallowance of 54 days good conduct time; (c) eight months loss of commissary privileges; and (d) eight months loss of phone privileges.  (Id. ¶¶ 21-22.)  Landor was provided with a copy of the DHO's report on September 8, 2010.  (Id. ¶ 23.)

Landor subsequently exhausted his available administrative remedies with respect to his claims that the Defendants subjected him to cruel and unusual punishment due to the use of ambulatory restraints following the July 5, 2010, incident.  However, Landor did not exhaust administrative remedies with respect to the DHO's disciplinary findings and sanctions.  (Id. ¶¶ 23-26.)

BOP policy provides that corrections staff may sometimes need to use force and restraints against inmates when inmates display signs of imminent violence, in order to prevent inmates from harming themselves, staff, or other inmates.  (Id. ¶ 27.) The same policy instructs that once an inmate is placed in restraints, the restraints

should remain on the inmate until he regains self-control. (Id. ¶ 31.) The BOP policy

provides the following illustration of the appropriate use of ambulatory restraints:

> An example of such situations is when an assaultive incident occurred
> quickly and ended, and the inmate is no longer displaying signs of
> violence or aggressiveness. Using ambulatory restraints for a period of
> time may be appropriate for protecting staff and others, pending an
> assessment by staff to determine whether the inmate has regained self-
> control.
>
> Staff should look for a pattern of non-disruptive behavior over a period
> of time as an indication the inmate has regained self-control and is no
> longer a disruptive threat. Additionally, the 15 minute and two-hour
> logs should be reviewed to support any decision concerning the release
> of an inmate in restraints. Inmates asleep at the time of two-hour review
> will be awakened to assess their condition.
>
> If the situation dictates the need for more restrictive or secure restraints,
> i.e., the inmate's behavior becomes increasingly aggressive, staff must
> determine the type of progressive restraints to be used (hard restraints
> with or without waist chain or waist belt, four-point soft restraints with
> hard restraints used for securing the inmate to the bed, or four-point hard
> restraints).

(Id. ¶ 34.)

The record reflects – and the DHO found – that on July 5, 2010, Defendant

Hepner was confronted by a truculent inmate who was acting in a threatening manner,

and who refused to comply with orders to remove his arm from a food tray. As a

result a use of force team was assembled, and the warden approved the use of

ambulatory restraints to address the situation. As noted, the use of force team

engaged in confrontation avoidance techniques with Landor, which were successful in allowing them to remove him from his cell without incident. (SMF ¶¶ 11-12.) However, the record also shows that prison officials determined, following regular observation of Landor, that the use of restraints remained necessary through July 10, 2010, because Landor continued to behave in a disruptive, agitated, and verbally aggressive manner towards staff. (Id. ¶ 13.)

The BOP policy that provides for the use of ambulatory restraints also provides that correctional officers must check an inmate in ambulatory restraints every 15 minutes, that lieutenants check every two hours, and that psychology services check on the prisoner once in every 24-hour period. (Id. ¶ 35-41.) The record indicates that staff at USP-Lewisburg complied with this policy with respect to the use of restraints on Landor, and conducted all required checks. (Id. ¶ 44-62.) The record also shows that Landor sustained no injury during the use of force procedure, or while in ambulatory restraints. (Id.) In addition, there is no evidence to support Landor's allegation that his wrists were cut by the restraints that were applied to him. While in restraints, Landor had the ability to use the toilet, and food was provided to him. (Id. ¶¶ 49, 56.)

Landor alleges that Defendant Hepner kneed him in the groin, grabbed his testicles, and threatened to place him in four-point restraints when he conducted the

12

first two-hour lieutenant check on July 5, 2010, after Landor had been placed in ambulatory restraints. (Id. ¶ 43.) In contrast to this allegation, however, Defendant Hepner has submitted an affidavit in which he denies assaulting or threatening Landor in any way. (Doc. 39, Ex. 1, Attach. 9, Hepner Decl.) In addition, a correctional counselor at USP-Lewisburg who accompanied Defendant Hepner during a restraint check did not witness Defendant Hepner assault or threaten Landor, although the counselor could not specifically recall the restraint check that Defendant Hepner performed on July 5, 2010. (Doc. 39, Ex. 4, Edinger Decl.) The Bureau of Prisons requires that all inmate allegations of staff abuse be referred for investigation, and Landor's allegations regarding Defendant Hepner were referred in accordance with this policy. (Doc. 39, Ex. 1, Cunningham Decl. ¶ 17.) Following an investigation, it was found that no misconduct occurred, and the investigation was closed. (SMF ¶ 69.)

Landor's medical record with BOP also contains no evidence or suggestion that Landor sustained an injury to his groin or testicles on July 5, 2010. (Id. ¶ 46-54, 70-84.) However, on September 27, 2010, Landor submitted a "copout" to medical staff in which he complained that pus was coming out of his penis. (Id. ¶ 71.) Medical staff responded to this complaint the following day, and instructed Landor to be more specific about his complaint, and to explain what happened. (Id. ¶ 72.)

On September 28, 2010, Landor submitted another "copout" to medical staff in which he stated:

> I have been complaining on suffering with my medical problems.  On July 5, 2010, Lt. Hepner, knee me in the groin area.  Ever since then I been having pus coming out of my penis.  I shown PA Navarro, and my new PA Almo how ever you spell his name.  When I use the bathroom it show up, and sometime when I wake up my penis head and boxer be all sticky.  When the incident first happen it use to hurt like crazy.  Now sometime pain come and go as when of my nuts just will move up on it own, that when the pain come in.  I try my best to avoid that pain right there, I have to pull it down to make it stop.

(SMF ¶ 73.)  Ferdinand N. Alama, MLP, recorded on Landor's September 28, 2010 "copout", "9/30/10 Seen on rounds."  (Id. ¶ 74.)

BOP records also contain a "Clinical Encounter - Administrative Note" entered by Ferdinand Alama on September 30, 2010, which states, "Inmate is not in pain nor showing signs of discomfort. . . . He agreed to work up with urinalysis when available." (Id. ¶ 75.)  However, Landor subsequently refused to undergo blood work and urinalysis when it was offered to him on October 21, 2010.  (Id. ¶ 76.)

On January 19, 2011, Landor reported to USP-Lewisburg's Clinical Director, Kevin Pigos, M.D., who noted that Landor had complained of having pain in his testicles since June 2010.  Dr. Pigos assessed the complaint as unspecified, and ordered urine and radiology tests.  (Id. ¶¶ 78-80.)  On February 1, 2011, the Utilization Review Committee for USP-Lewisburg Health Services approved the

request for Landor to undergo a radiological test for his testicular pain.  (Id. ¶ 80.) Accordingly, on March 14, 2011, Landor underwent a scrotum duplex ultrasound, which revealed no significant abnormality.  On April 4, 2011, Landor once again refused to consent to blood work or to provide a urine sample.  (Id. ¶ 84.)  Thus, the record indicates that Landor's medical concerns were addressed, and that on more than one occasion Landor refused to accept the treatment and diagnostic procedures made available to him.

Landor commenced this lawsuit against Defendants Bledsoe, Hepner, and Trate on April 20, 2011.  (Doc. 1)   Landor brought this Bivens action against the prison warden, a captain, and Lieutenant Hepner, alleging that these Defendants used excessive force against him during the course of the cell extraction on July 5, 2010, and the subsequent use of ambulatory restraints against Landor.  (Doc. 29, Am. Compl.)  Specifically, the plaintiff alleges that Lieutenant Hepner violated his rights when he (a) authorized a use-of-force team to place Landor in ambulatory restraints; ordered the team to apply the restraints with unnecessary tightness; and ordered the team to place Landor in a cell that had human waste on the walls, floor, toilet, and sink, and that was poorly ventilated.  (Id.)  Landor also alleges that when Lieutenant Hepner conducted an initial check on Landor's ambulatory restraints in cell 118, the

officer kneed him in the groin, grabbed his testicles, and threatened to place Landor

in four-point restraints if he did become compliant within five days.  (Id.)

Landor also alleges that Warden Bledsoe violated his rights, though he alleges

only that "Bledsoe hold extraordinary power to ruin prisoners lives and inevitably,

the least ethical BOP official will abuse their power, out of laziness, incompetence,

ambition, not because the institution that employs them is corrupt, but because

inadequate vigilance enables them (BOP official)."  (Id., at 8.)  Landor has also

identified Captain Trate in the caption of the amended complaint, but he has not

included any allegations against him.  Subsequently, on October 4, 2011, Landor filed

an amended complaint, an amended complaint which added no further details to his

claims against Captain Trate.  (Doc. 29)  As relief, Landor seeks $5,000 from each

Defendant.

Defendants filed the pending motion to dismiss, or in the alternative, for

summary judgment on October 27, 2011, (Doc. 33), and filed a brief in support of the

motion together with a statement of material facts on November 10, 2011 (Docs. 39,

40).  Despite having been granted multiple enlargements of time in which to respond

to the Defendants' motion, Landor has never filed a brief in opposition, or otherwise

contested the motion in any way.  Upon consideration, we now find that Landor has

had sufficient time and opportunity to respond to the motion, and we find it

appropriate to address the motion without further delay.  For the reasons that follow,
we conclude that Defendants have proffered a number of persuasive and undisputed
reasons why this action should be dismissed and judgment entered in Defendants
favor with respect to all of Landor's claims.

## IV.   STANDARD OF REVIEW

Defendants have filed a dispositive motion, seeking judgment in their favor
either through an order dismissing the amended complaint for failure to state a claim
pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or through
summary judgment entered pursuant to Rule 56.  The standards governing each basis
for relief are summarized below.

### A.   Motion to Dismiss - Rule 12(b)(6)

Rule 12(b)(6) provides that a complaint should be dismissed for "failure to
state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  With
respect to this benchmark standard for assessing the legal sufficiency of a complaint,
the United States Court of Appeals for the Third Circuit has recently described the
evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in
> recent years. Beginning with the Supreme Court's opinion in Bell
> Atlantic Corp. v. Twombly, 550 U.S. 544 (12007) continuing with our

opinion in Phillips v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008) and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right

18

to relief above the speculative level." <u>Id.</u> In keeping with the principles of <u>Twombly</u>, the Supreme Court recently underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In <u>Ashcroft v. Iqbal</u>, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u> at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Id.</u> at 1950.

Thus, following <u>Twombly</u> and <u>Iqbal</u> a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level

of mere speculation.  As the United States Court of Appeals for the Third Circuit has

stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First, the
> factual and legal elements of a claim should be separated. The District
> Court must accept all of the complaint's well-pleaded facts as true, but
> may disregard any legal  conclusions.  Second, a District Court must
> then determine whether the facts alleged in the complaint are sufficient
> to  show that the plaintiff has a "plausible claim for relief." In other
> words, a complaint must do more than allege the plaintiff's entitlement
> to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

### B.    Summary Judgment - Rule 56

Federal courts are permitted to summarily adjudicate an action in order to

dispose of those claims that do not present a "genuine issue as to any material fact,"

Fed. R. Civ. P. 56, and for which a jury trial would therefore "be an empty and

unnecessary formality," Peynado v. Sabol, No. 09-355, 2010 U.S. Dist. LEXIS

134131, 2010 WL 5300563, at *2 (M.D. Pa. Dec. 20, 2010).  Rule 56 specifically

provides that "[t]he judgment sought should be rendered if the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c).  The substantive law identifies which facts are

material, and "[o]nly disputes over facts that might affect the outcome of the suit

under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 586 (1986).  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion."  <u>A.W. v. Jersey City Pub. Schs.</u>, 486 F.3d 791, 794 (3d Cir. 2007).

### C.   Failure to Oppose a Dispositive Motion

Although Local Rule 7.6 provides that a party who fails to respond timely to a motion will be deemed not to oppose the motion, where the pending motion seeks dismissal or summary judgment, a court generally should not grant the dispositive motion solely because it is unopposed, but instead should typically review the merits of the motion.  <u>See</u> <u>Stackhouse v. Mazurkiewicz</u>, 951 F.2d 29, 30 (3d Cir. 1991); <u>Anchorage Assocs. v. Virgin Islands Board of Tax Review</u>, 922 F.2d 168, 174 (3d Cir. 1990).  However, the Third Circuit Court of Appeals has stated that Local Rule 7.6 may be applied to grant a motion to dismiss without analysis of the complaint's sufficiency "if a party fails to comply with the rule after a specific direction to comply from the court."  <u>Stackhouse</u>, 951 F.2d at 30.

Furthermore, failure to prosecute an action may warrant dismissal under Rule 41(b), which provides, in pertinent part:

> For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision ... operates as an adjudication on the merits.

22

Fed. R. Civ. P. 41(b).

The granting of an unopposed motion to dismiss is within the discretion of the court.  When a plaintiff fails to prosecute or comply with a court order, the court may dismiss the action, with prejudice, under Rule 41(b). See Link v. Wabash R.R. Co., 370 U.S. 626, 629, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984) (identifying six factors that are appropriate to consider before dismissing a case for the plaintiff's late filing of a pretrial statement: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.); Stackhouse, 951 F.2d at 30 (holding that failure of a plaintiff to comply with a court's specific direction to comply with a local rule requiring the filing of an opposing brief warranted the treatment of a motion to dismiss as being unopposed and subject to dismissal without a merits analysis).

In this case, we now find that Landor has unreasonably failed to oppose or otherwise respond to the motion despite having had sufficient time and opportunity to do so.  Although we believe that the Court could grant the motion as unopposed,

in the interest of fairness to Landor, and because we find the motion to have clear substantive merit, in that Landor has failed to provide evidence in support of his claims, we have consider the merits of the Defendants' motion. Following this review, for the reasons discussed below, we will recommend that the motion be granted.

V. **DISCUSSION**

While Landor's failure over the span of many months to substantively respond to this defense motion hobbles our efforts to understand his position in this case, we have conducted a review of this matter based upon the factual record which Landor has elected to provide to us. Based upon this review, for the reasons set forth below, and in the posture created by Landor's inaction, we find that the Defendants are entitled to judgment in their favor on Landor's various claims.

A. **The Favorable Termination Rule Bars Plaintiff's Claims That USP-Lewisburg Officials Unlawfully Removed Him From His Cell and Subjected Him to Ambulatory Restraints.**

As a threshold matter, to the extent that Landor seeks in this lawsuit to indirectly challenge the outcome of his prison disciplinary hearing, the Plaintiff's claims that the Defendants unlawfully authorized, assembled, and utilized a use of force team to remove Landor from his cell in D-Block at USP-Lewisburg should be dismissed because the Disciplinary Hearing Officer at USP-Lewisburg found Landor

guilty of the violations of blocking a locking device and refusing to obey an order, and Landor has not shown that this decision has terminated in his favor.   As explained below, the favorable termination rule clearly applies in this case, and bars at least some of Landor's claims.

In Heck v. Humphrey, 512 U.S. 477 (1994), the United States Supreme Court held that a prisoner cannot maintain a cause of action under 42 U.S.C. § 1983 for alleged civil rights violations where success in the lawsuit would effectively invalidate the prisoner's underlying conviction and sentence.  512 U.S. at 486-87. Instead, before a prisoner can bring such an action, he must prove that the conviction or sentence has been reversed, invalidated, or called into question by the grant of federal habeas corpus relief.  Id.  In Heck, the Court found that the inmate's suit, which alleged that his conviction had been obtained through unlawful investigatory practices and the destruction of exculpatory evidence, could not go forward because it was, effectively, an impermissible collateral attack upon his conviction and sentence and could result in irreconcilable conflict between the prisoner's civil and criminal proceedings.  Id. at 484-86; see also Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) ("A state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) –

if success in that action would necessarily demonstrate the invalidity of the confinement or its duration."). The favorable termination rule is not only applicable to lawsuits by prisoners whose civil suits would invalidate their convictions and sentences in court, but also to lawsuits by prisoners whose claims could call into question the validity of prison disciplinary proceedings. Edwards v. Balisok, 520 U.S. 641, 643 (1997) (prisoner was barred from seeking damages and declaratory relief for alleged procedural defects in prison disciplinary proceedings because prevailing on his claim that the disciplinary officer was biased "would, if established, necessarily imply the invalidity of the deprivation of [the inmate's] good time credits.").[4]

In this case, Landor has claimed, *inter alia*, that Lieutenant Hepner unlawfully authorized, assembled, and utilized a use of force team to remove him from his cell in D-Block at USP-Lewisburg. However, the Disciplinary Hearing Officer previously found Landor guilty of blocking a locking device and refusing to obey an order, and imposed sanctions on him for these violations. (SMF ¶¶ 12-20.) In making his findings and imposing discipline, the DHO considered and rejected Landor's version

---

[4] The favorable termination rule is applicable to Bivens claims as well as to civil rights actions brought against state actors under 42 U.S.C. § 1983. See Lora-Pena v. Federal Bureau of Investigation, 529 F.3d 503, 506 n.2 (3d Cir. 2008) (citations omitted).

of the incident, which Landor attempts to repeat in this lawsuit.  Thus, were Landor to prevail on his claims that authorizing, and using, a use of force team to remove him from his cell on July 5, 2010, was unlawful, he would necessarily implicate and call into question the validity of the DHO's finding that Landor was guilty of the very violations that caused Lieutenant Hepner to seek permission to utilize a use of force team, and that caused Defendant Bledsoe to authorize its use with respect to Landor. Heck and Edwards make clear that such claims are impermissible.  Because these claims are plainly barred by Heck and Edwards, the Court should dismiss Landor's claims against the Defendants for authorizing a use of force team to remove him from his cell and place him in ambulatory restraints.

### B.   Plaintiff's Claims Against Warden Bledsoe and Captain Trate Fail for Lack of Personal Involvement and Insufficient Allegations.

Further, we note that although Landor names Warden Bledsoe and Captain Trate as Defendants in caption of the amended complaint (Doc. 29), he has failed to include any allegations with respect to Captain Trate, and has included only generic claims of supervisory liability against Warden Bledsoe.  The amended complaint is plainly insufficient with respect to each of these Defendants, and summary judgment in favor of both of these Defendants is warranted.

First, as to Defendant Trate, it is impossible even to know why Landor has named him in the caption of the complaint because he never mentions him anywhere in the amended complaint, and never suggests why he has been sued, or what he is believed to have done.  Rather, Landor merely listed this Defendant in the caption of the complaint, without setting forth any basis for a claim against them in the body of this pleading, a style of pleading which is plainly inadequate to state a claim against a prison supervisor and compels dismissal of these defendants.  Hudson v. City of McKeesport, 241 F. App'x 519 (3d Cir. 2007)(affirming dismissal of defendant who was only named in caption of case.)  Given the lack of allegations against him we submit that Captain Trate should be dismissed.

With respect to Warden Bledsoe, it appears that Landor has named him simply because of his role as the warden of USP-Lewisburg, and is endeavoring to subject him to some kind of supervisory liability.  Thus, Landor merely alleges:

> The simple fact is that Warden B.A. Bledsoe hold [sic] extraordinary power to ruin prisoners [sic] lives and inevitably, the least ethical BOP official will abuse their power, out of laziness, incompetence, ambition, not because the institution that employs them is corrupts but because inadequate vigilance enables them (BOP official).

(Doc. 29, at 8.)  This allegation is insufficient to state a claim against Warden Bledsoe.

It is well-settled that in order to hold a defendant liable for a civil rights violation, a plaintiff is required to allege that the defendant had personal involvement in the violation alleged, because supervisory liability is not available as a basis for relief in a <u>Bivens</u> action. <u>See</u> <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (supervisors "may not be held accountable for the misdeeds of their agents"); <u>Ruiz Rivera v. Riley</u>, 209 F.3d 24, 28 (1st Cir. 2000) (collecting cases holding that *respondeat superior* liability is unavailable as a basis for relief in <u>Bivens</u> actions). The same rule applies to claims brought against state officials under 42 U.S.C. § 1983 alleging constitutional violations. <u>See</u> <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207-08 (3d Cir. 1988) (holding that there is no *respondeat superior* liability in cases brought pursuant to 42 U.S.C. § 1983). Although liability may not be predicated upon *respondeat superior*, the requirement that a defendant have personal involvement in the alleged wrongs may be satisfied upon a showing of "personal direction or of actual knowledge and acquiescence." <u>Id.</u>; <u>see also</u> <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005) (an individual government defendant "in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.").

Plaintiff's complaint runs afoul of all of these elementary principles, as it alleges no facts even suggesting that Defendants Bledsoe or Trate had personal

29

involvement in the matters alleged in the complaint.  Even though it is undisputed that Defendant Bledsoe was informed of Landor's conduct on July 5, 2010, and that the warden authorized the use of force team to remove Landor and place him in ambulatory restraints, Landor's amended complaint does not make any claims relating to this authorization.  Furthermore, even if the amended complaint had set forth some allegation that these defendants were personally involved in authorizing this disciplinary action, Landor has not explained – less supported with evidence – how this conduct arises to a constitutional violation.

In addition, to the extent that Landor is endeavoring to claim that Defendants Bledsoe or Trate are liable for maintaining deficient policies that resulted in his sustaining an Eighth Amendment violation, the amended complaint is inadequate. The Third Circuit has explained that in order to make such a claim, a plaintiff must show that (1) the existing policy or practice created an unreasonable likelihood of an Eighth Amendment injury; (2) the supervisory defendant was aware that an unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice.  See Beers-Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir. 2001).  In this case, Landor has not alleged sufficient facts even to make out a claim under this standard, and he has not come forward with any evidence to support this very generally pleaded claim.

Because the Plaintiff has failed to make sufficient allegations of personal involvement on the part of Warden Bledsoe or Captain Trate, and because he cannot pursue claims against these Defendants solely on the basis of *respondeat superior*, we will recommend that the Court enter judgment in these Defendants' favor.[5]

---

[5] The Defendants have collectively asserted that they are entitled to qualified immunity on Plaintiff's claims that being subjected to ambulatory restraints for a period of five days violated his Eighth Amendment rights. We find it unnecessary to address this argument, however, because we have concluded that the Plaintiff's failure to respond to the Defendants' motion in any way, or to dispute the evidence offered in opposition to his claims, or to properly support his claims with sufficient evidence, all clearly compel the entry of summary judgment in the defendants' favor. We note that the question of whether the duration of the use of ambulatory restraints amounts to an Eighth Amendment violation appears to be highly dependent upon factual context, and courts have found in extreme cases either that use of restraints in a particular manner constituted an Eighth Amendment violation, or that qualified immunity was not warranted due to the circumstances of the restraint. See, e.g., Hope v. Pelzer, 536 U.S. 730, 741 (2002) (holding that corrections officers violated clearly established right where they confined inmate to a hitching post for seven hours, in standing position, with his shirt off and subject to scorching heat without water or bathroom breaks, while being taunted by officers); Womack v. Smith, No. 1:06-CV-2348, 2011 WL 819558, *14-15 (M.D. Pa. Mar. 2, 2011) (rejecting qualified immunity in case where inmate at USP-Lewisburg was placed in ambulatory restraints for 26 days). Other courts have awarded qualified immunity in cases involving the use of ambulatory restraints, although typically in cases involving the use of restraints for a matter of hours or for fewer than three days. See, e.g., Hill v. Lappin, No. 3:CV-11-319, 2012 WL 896234, *12 (M.D. Pa. Mar. 15, 2012) (11 hours); Hunter v. Bledsoe, 2010 WL 3154963 (M.D. Pa. Aug. 9, 2010) (24 hours); Keyes v. O'Brien, No. Civ. A. 7:06CV00437, 2006 WL 2125912 (W.D. Va. July 27, 2006) (30 hours); Garaway v. United States, No. 04-CV-01049, 2006 WL 3054606, at *8 (D. Colo. July 24, 2006) (50 hours); Saleh v. Ray, No. Civ. A. 02-3214, 2003 WL 23484639, at *6 (D. Kan. 2003) (24 hours). It is recommended that the District Court decline the Defendants' invitation to make a broad ruling regarding the use

Therefore, it is recommended that Landor's complaint against Defendants Bledsoe and Trate be dismissed with prejudice.

> **C.     Plaintiff Has Failed to Support His Claims That Defendant Hepner Violated His Eighth Amendment Rights.**

As to Defendant Hepner, Landor's claims stand in a somewhat different footing.  Landor's complaint initially made allegations against Defendant Hepner with some factual specificity.   The real gravamen of this action appears to be Landor's allegation that Lieutenant Hepner violated his Eighth Amendment rights by utilizing a use of force team to remove him from his cell, causing him to be placed in ambulatory restraints, and assaulting him.  However, having made these allegations, Landor now has failed for almost six months to support them when confronted with the detailed proof amassed by Defendant Hepner challenging and refuting these claims.

In a summary judgment setting Lander must do more than simply ignore his obligation to substantively respond to Defendant Hepner.  In this context, the moving party– Defendant Hepner–has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  <u>Conoshenti v. Pub.</u>

---

of ambulatory restraints, and the availability of qualified immunity, given that clear basis for granting summary judgment on the more straightforward grounds that the Plaintiff has failed to come forward with sufficient evidence to support his claims, or to respond to the dispositive motion in any way.

Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  We find that Defendant Hepner's pleadings, declarations and exhibits have carried this initial burden.

Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence.  Anderson, 477 U.S. at 249.  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).   In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995).  This rule applies with particular force to parties who attempt to rely upon hearsay statements to establish material issues of fact which would preclude summary judgment.  With respect to such claims, it is well-settled that:  "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial." Shelton v. University of Medicine & Dentistry of N.J., 223 F.3d 220, 223, n.2 (3d Cir. 2000), citing  Stelwagon Mfg. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1275, n.17 (3d Cir. 1995).  In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a court may only consider evidence which is admissible at trial, and that a party can not rely on hearsay evidence when opposing a motion for summary judgment. See Buttice v. G.D. Searle & Co., 938 F.Supp. 561 (E.D.Mo.1996).  Additionally, a party must respond to a hearsay objection by demonstrating that the material would be admissible at trial under an exception to hearsay rule, or that the material is not hearsay. See Burgess v. Allstate Ins. Co., 334 F.Supp.2d 1351 (N.D.Ga.2003). The mere possibility that a hearsay statement will be admissible at trial, does not permit its consideration at the summary judgment stage. Henry v. Colonial Baking Co. of Dothan, 952 F.Supp. 744 (M.D.Ala.1996).

Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005). Thus, a party may not rely upon inadmissible hearsay assertions to avoid summary judgment. Therefore, where a party simply presents inadmissible hearsay declarations in an attempt to establish a disputed material issue of fact, courts have typically rebuffed these efforts and held instead that summary judgment is appropriate. See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007); Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc., 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple Univ., 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to

35

rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).  In particular, a plaintiff cannot avoid summary judgment by simply relying upon a self-declaration that he has authored which relies not on evidence, but on the plaintiff's own interpretation of events and, essentially, opinion testimony. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) (the nonmoving party may not defeat a properly supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with the conclusory allegations of an affidavit."); Iseley v. Beard, No. 02-2006, 2009 U.S. Dist. LEXIS 52014, *32 (M.D. Pa. Mar. 30, 2010) (conclusory allegations contradicted by documentary evidence cannot be accepted as true).

By failing to respond in any substantive way to Defendant Hepner's claims, Landor has plainly failed to meet the burden placed upon him by Rule 56.  He has failed in this regard despite having been provided numerous opportunities to file a substantive response.  Therefore, on the current record, Landor's allegations that Lieutenant Hepner used excessive force against him and subjected him to cruel and unusual punishment are also properly subject to summary judgment because Landor has failed to support the claims with evidence.

In what is perhaps his most serious allegations of misconduct, Landor has alleged that Lieutenant Hepner assaulted and injured him by kneeing him in the groin and grabbing his testicles, in addition to threatening him with more severe discipline if he did not comply with orders.  Although Landor has lodged this allegation against Lieutenant Hepner in his complaint, he has utterly failed to substantiate the allegation through competent evidence as he is required to do at this stage of the proceedings. Landor's failure in this regard is set starkly against considerable evidence in the record that flatly discredits his claim.  Thus, although Landor alleges that Hepner assaulted him, Lieutenant Hepner and a corrections counselor have provided sworn affidavits stating that Hepner did no such thing.

Additionally, in more than 30 medical assessments of Landor that were conducted immediately following his placement into ambulatory restraints on July 5, 2010, Landor never once claimed to have been assaulted or injured by Lieutenant Hepner.  Likewise, Landor's allegations are not reflected in the more than 60 lieutenant checks that were conducted during the same five-day period, or in the more than 900 checks performed by various corrections officers, or in the four times when Landor was seen by prison psychology staff, or in any of the extensive medical records that were compiled over the following year.  In short, Landor has offered nothing other than his own allegation in the complaint that Lieutenant Hepner

assaulted him by kneeing him in the groin and grabbing his testicles.  Since "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument," Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986), in the absence of evidence to support this claim, and in the face of the substantial evidence that discredits or fails to offer any support for this allegation, we find that the claim is properly subject to summary judgment.

In addition, to the extent that Landor is alleging that Lieutenant Hepner violated the Eighth Amendment by authorizing an unnecessary use of force procedure, the record does not support this claim.  Instead, the evidence indicates that Warden Bledsoe authorized the use of force procedure in response to reports that Landor was blocking his food tray and refusing orders to remove his arm.  Thus, Warden Bledsoe authorized this calculated use of force, not Lieutenant Hepner, and Landor's claims against Lieutenant Hepner for this action should be dismissed.

In the amended complaint, Landor also appears to be making an Eighth Amendment claim that Lieutenant Hepner initially ordered the use of force team to apply the ambulatory restraints with unnecessary tightness.  This allegation not only lacks any evidentiary support in the record, but is further discredited by the fact that Defendant Hepner and a member of the medical staff of the prison checked the

restraints after they were applied and the medical personnel confirmed that the restraints were not applied so tight that they could cause harm. (SMF ¶¶ 45-49.)   In the specific factual context of excessive force claims based upon allegations that a prisoner's handcuffs were too tight courts have acknowledged that, in certain instances, government officials are entitled to qualified immunity as a matter of law. Gilles v. Davis, 427 F.3d. 197, 207 (3d Cir. 2005).   With respect to these particular excessive force claims, the test for qualified immunity can be simply stated: "In these cases, summary judgment for an officer who claims qualified immunity is appropriate where, 'after resolving all factual disputes in favor of the plaintiff, [ ] the officer's use of force was objectively reasonable under the circumstances.' " Id.   Given the lack of evidence in support of Landor's claim, and considering the undisputed evidence that thoroughly undermines the allegation, we conclude that Defendant Hepner is entitled to judgment in their favor on this particular claim.

Likewise, we find that Landor has failed to support his claim that Defendants violated the Eighth Amendment by placing him in an unsanitary cell, which Landor alleged was marked by human waste on the walls, floor, toilet, and sink that was easily visible.   As with his other claims, Landor has nothing other than his own bald allegation in support of this claim, and Defendants have submitted evidence to demonstrate that the spots that were visible throughout Landor's cell were caused by

flaking paint, not human waste.  (SMF ¶¶ 93-97.)  This undisputed evidence includes the video taken by the use of force team, a declaration from the camera operator who filmed the cell transfer, and photographs of cell 118.  Given the evidence discrediting Landor's claim, and the fact that the Plaintiff has offered no evidence to substantiate his allegations, we conclude that Defendants are entitled to summary judgment on this aspect of Landor's amended complaint.

Finally, Landor alleges that the Defendants violated his Eighth Amendment rights by placing him in cell 118, which he claims was unreasonably hot, and that the use of force team refused to open a window for him.  Regardless of whether this very thin claim could even survive a motion to dismiss, at this point in the litigation Landor's failure to submit any evidence to support this allegation is fatal to his ability to proceed, and summary judgment is warranted.   Moreover, Defendants have submitted evidence to show that Landor never requested that a window be opened for him, and they emphasize that BOP policy does not require that inmates be placed in observation cells with a camera while they are in ambulatory restraints.  (SMF ¶¶ 12, 42.)  As with Landor's other claims, we find that the undisputed evidence in the record fails to support his claims, and Defendants have presented evidence demonstrating that they are entitled to judgment in their favor.

We do observe that Landor submitted an affidavit from an inmate named Muhammad Dye, which was an attachment to the amended complaint.  (Doc. 29, Attach.)  Dye was an inmate who was housed in cell 118 for a brief period from approximately 11:30 p.m. on July 6, 2010, until approximately 12:30 p.m. July 7, 2010.  Although the general declarations contained in the affidavit lend very limited support for the Plaintiff's claims, the evidence shows that Dye was present in cell 118 for a period of only 13 hours – in contrast to his claim that he was in the cell for two days – and was not present when Landor was first taken to cell 118, and thus was not present when Landor alleges that Lieutenant Hepner assaulted him.  Dye's affidavit also stands in stark contrast to the more detailed and extensive medical reports and restraint checks that thoroughly undermine Landor's claims, and by, extension, Dye's own general representations.  Indeed, in this regard, we find that Dye's declaration is, in reality, nothing more than the "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which] do not suffice." Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937, 1949 (2009).

Although we will not weigh evidence when reviewing a motion for summary judgment, it is also well established that a mere scintilla of evidence in a Plaintiff's favor is insufficient to survive a properly supported motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("The mere existence

of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.") This case is emblematic of this rule: Landor has submitted a spare affidavit from an inmate who was celled with him for a period of just over half a day, who was not present during critical periods at issue in the case, and whose very general representations stand in dramatic contrast to the overwhelming evidence against Landor's claims. Given Landor's failure to make any response to the Defendants' motion for summary judgment, or to the evidence offered in support thereof; and given the very limited evidentiary value of Dye's affidavit, we conclude that it is plainly insufficient on its own to permit Landor's claims to go forward because no reasonable jury could find in Landor's favor on the basis of this evidence alone. As this is the only piece of evidence we can discern that provides even a modicum of support for Landor's claims, we find that it is inadequate to allow the Plaintiff to move past summary judgment in this case.

Having conducted this analysis and determined that Landor's amended complaint is wholly wanting with respect to Defendants Bledsoe and Trate, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, See Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir.

2007), unless granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). With respect to Defendants Bledsoe and Trate we find that the current amended complaint still fails to state a viable civil rights cause of action against these prison supervisors, and actually repeats assertions that are plainly legally insufficient. Since the Plaintiff has failed to state a viable civil rights cause of action, and the factual and legal grounds proffered in support of the complaint make it clear that he has no right to relief from these Defendants, granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Therefore, it is recommended that the amended complaint be dismissed without further leave to amend as to Defendants Bledsoe and Trate.

As for Defendant Hepner, while our analysis calls for dismissal of this action in its current form, recognizing that Landor initially made more specific allegations against this Defendant which he subsequently failed to support, we recommend that the Plaintiff be given another, final opportunity to further litigate this matter by endeavoring to promptly file an amended complaint as to this Defendant alone, which addresses in a more comprehensive and coherent fashion the deficiencies cited in this report and recommendation. We recommend this course mindful of the fact that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend

a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee

Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless

granting further leave to amend is not necessary in a case such as this where

amendment would be futile or result in undue delay, Alston v. Parker, 363 F.3d 229,

235 (3d Cir. 2004). Accordingly, it is recommended that the Court provide the

Plaintiff with an opportunity to correct these deficiencies in the *pro se* complaint, by

dismissing this deficient complaint lodged against Defendant Hepner at this time

without prejudice to one final effort by the Plaintiff to comply with the rules

governing civil actions in federal court.

## VI.   **RECOMMENDATION**

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED

THAT Defendants' motion to dismiss or, in the alternative, for summary judgment

(Doc. 33) be GRANTED and the case be DISMISSED with prejudice as to

Defendants Bledsoe and Trate.  As to Defendant Hepner IT IS RECOMMENDED

that the complaint be  DISMISSED WITHOUT PREJUDICE to the Plaintiff

endeavoring to correct the defects cited in this report, provided that the Plaintiff acts

within 20 days of any dismissal order.

> The parties are further placed on notice that pursuant to Local Rule 72.3:
> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in

28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 12th day of April 2012.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge