# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAMON LANDOR, | : | |
| | : | |
| Plaintiff | : | Civil No. 1:11-CV-759 |
| | : | |
| v. | : | (Judge Caldwell) |
| | : | |
| B.A. BLEDSOE, Warden; | : | (Magistrate Judge Carlson) |
| B. TRATE, Captain; and | : | |
| LT. HEPNER, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM ORDER

## I.  INTRODUCTION

This action was brought as a <u>Bivens</u>[1] action by Damon Landor, an inmate in the Special Management Unit at the United States Penitentiary at Lewisburg ("USP-Lewisburg").  In his amended complaint, Landor alleges that Warden B.A. Bledsoe, Captain Trate, and Lieutenant Hepner at USP-Lewisburg subjected him to unlawful excessive force in July 2010, by having him removed from his prison cell and placed in ambulatory restraints for a period of five days after the Plaintiff was found to have become non-compliant and threatening to prison staff.  (Doc. 29)  Specifically,

---

[1] <u>Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388, 397 (1971) (a citizen suffering a compensable constitutional injury may invoke federal question jurisdiction to seek an award of monetary damages against federal agent).

Landor claims that the Defendants are liable for authorizing him to be removed from his cell with force and using ambulatory restraints against him between July 5, 2010, and July 10, 2010, after he refused orders to remove his arm from the food slot that he was obstructing, and after he threatened to throw feces on any staff member who came near his cell.

Defendants moved for dismissal or summary judgment on Plaintiff's claims nearly half a year ago, on October 27, 2011, and served Plaintiff with their statement of material facts and brief in support of the motion on November 10, 2011. (Docs. 33, 39, 40) The Court entered an order directing Landor to file a responsive brief by December 8, 2011. (Doc. 43) Landor failed to respond by this date, but later informed the Court that he was "having problems with the administration" at the prison, and claimed that in late November 2011, prison officials confiscated his legal materials and other property, thereby rendering him unable to respond to the motion. (Doc. 45) In response, the Court entered an order directing the Defendants to provide Landor with additional copies of the motion, brief, and statement of facts by January 6, 2012, and directed Landor to file a responsive brief by January 31, 2012. (Doc. 49) Landor was served with these documents a second time on January 5, 2012. (Doc. 50)

On January 24, 2012, Landor moved for an extension of time to respond to the motion, and the Court directed the Plaintiff to respond on or before February 14,

2012. (Docs. 52, 53) On February 6, 2012, the Court again enlarged Landor's response deadline to February 27, 2012, and directed the Defendants to make inquiries to ensure that the Plaintiff had been given access to legal materials consistent with the security needs of the prison. (Doc. 55)

After Landor again failed to file a response in accordance with the Court's orders, we entered an order directing the Defendants to file a document with the Court explaining whether Landor had been given access to his legal materials, consistent with the security needs of the prison, since entry of the February 6, 2012, order. (Doc. 58) Defendants timely responded, and informed the Court that although Landor's personal property had been removed from his cell on January 27, 2012, as part of an official investigation, it had been returned to him on February 7, 2012. (Doc. 59) Furthermore, the Defendants reported that Landor spent 14.6 hours in the prison law library since December 1, 2011, including four hours on January 27, 2012, two and one-half hours on January 31, 2012, and more than three and one-half hours on February 22, 2012. (Id.)

Despite having had notice of the Defendants' dispositive motion since November 2011, and despite having had access to his legal materials and the ability to conduct legal research in the prison law library for several months, the Plaintiff failed to file a brief in response to the motion. Upon consideration, we concluded that notwithstanding the brief period when he was deprived of his legal materials, Landor

had sufficient time and opportunity to file a response, and he unreasonably failed to do so. Accordingly, we found it appropriate to consider the motion as filed, and recommended that the District Court grant the motion by dismissing Landor's claims against Defendants Bledsoe and Trate with prejudice, and dismiss the claims against Defendant Hepner without prejudice to Landor's attempting to correct the deficiencies we identified in the complaint by amending his pleading within 20 days of any ruling by the District Court.

The Plaintiff failed to file objections to our report and recommended disposition. Accordingly, on May 17, 2012, the District Court entered an order adopting this Court's report and recommendation, and dismissed Plaintiff's claims against Defendants Bledsoe and Trate with prejudice, and dismissed Plaintiff's claims against Defendant Hepner without prejudice to Plaintiff's right to file an amended complaint within 20 days. (Doc. 72) Following this order, Plaintiff is required to file an amended complaint on or before June 6, 2012, or risk having this action dismissed in its entirety with prejudice. (Id.)

Although Landor declined to file an objection to the report and recommendation, while the report was pending before the District Court, Landor filed two motions that are now before this Court. In the first motion, Landor seeks the entry of a "protective order" and the continuance of this action in order permit Landor time to hire an attorney. (Doc. 67) In support of this motion, Landor alleges that

officials at USP-Lewisburg are responsible for losing a "tremendous amount" of unspecified legal materials and unidentified legal mail. (Id.) Landor represents that he "cannot afford to jeopardize his case" under allegedly "unlawful" conditions at USP-Lewisburg. (Id.) In baldly conclusory fashion, Landor expresses his concern that his case may be jeopardized under "unlawful" conditions at the prison, and that he will suffer violation of his First Amendment rights.

As noted above, when Landor initiated this action, and when he later amended his complaint, his claims were limited to allegations that Warden Bledsoe, Captain Trate, and Lieutenant Hepner violated his rights under the Eighth Amendment to the United States Constitution by subjecting him to ambulatory restraints following an incident of serious misconduct. As a result of the District Court's order, these claims have been conclusively dismissed with respect to Messrs. Bledsoe and Trate, and the same claims against Defendant Hepner have been dismissed without prejudice to Plaintiff attempting to replead the claim against this Defendant if he does so by June 6, 2012. (Doc. 72)

In contrast, Plaintiff's pending motion improperly seeks to expand upon the limited claims brought in this action to include entirely new legal claims and allegations that all post-date this incidents that formed the basis for Plaintiff's claims in this litigation. Thus, it appears that Mr. Landor now seems to be alleging that as a result of bringing this lawsuit, he has been subjected to retaliation by corrections

officers or officials at USP-Lewisburg in 2012. In this regard, Landor claims that in January 2012 his prison cell was searched and corrections officers temporarily removed his property, including legal materials. Landor also complains about the manner and condition in which these materials were later returned to him. (Doc. 67, at 2)

Landor also alleges that in March 2012, an envelope in which he had placed a "soy bean pattie," an item Landor apparently intended to mail to the Court, was improperly taken or never delivered. (Id.) It appears that Landor intended to mail this food article to the Court as an exhibit in support of a document or brief that he planned to file in this action. As a result of the alleged mishandling or destruction of this soy bean patty exhibit, which Landor suggests was retaliatory, Landor asks the Court to compel the parties named in this lawsuit to produce video footage that Landor claims would prove he handed the food product exhibit to a correction officer during the night hours of March 11, 2012.[2] (Id.)

---

[2] In his amended complaint, Plaintiff alleged that he had been improperly served with a soy food product during a meal at USP-Lewisburg, and as a result he complained that he had not been provided a peanut butter product as a substitute. Landor became angry with the corrections staff distributing meals declined Landor's requests that a lieutenant be summoned to address this food-related complaint. It is this food-related dispute that apparently led to the more serious confrontation Landor had with USP-Lewisburg officers, and his eventual extraction and shackling that formed the basis for Plaintiff's claims in this case. (Doc. 29) However, the Court cannot perceive the relevance or probative value of the soy bean patty Plaintiff attempted to send to the Court in support of a brief that

Landor also claims that in April 2012, he was wrongfully accused of damaging prison-owned barber clippers worth less than $70.00. Landor concludes, without explanation, that he was accused of this infraction in retaliation for suing the three Defendants originally named in this action. (Id. at 3.)

On the basis of these entirely new, and wholly conclusory allegations, Landor now requests that the Court issued a "protective order," and stay or continue this action to allow him time to hire his own counsel. In addition, Landor has filed another motion that seeks "to be heard," and appears to seek a court order directing prison officials to provide Landor with grievance forms. For the reasons that briefly follow, the motions will be denied.

## II.   DISCUSSION

### A.   There is No Basis for Entry of a Protective Order.

Landor claims to be seeking a "protective order," but we cannot understand what exactly he means by this request. (Doc. 67) In the ordinary course of litigation, protective orders may be issued during the course of pre-trial discovery or at other points in the litigation in order to protect against disclosure or publication of sensitive information. Rule 26(c) of the Federal Rules of Civil Procedure permits a party from whom discovery is sought to seek from the court, for good cause shown, "any order

---

was never filed.

which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The Court's order may include terms precluding or limiting discovery, and may provide "that a trade secret or other confidential research, development, or commercial information may not be revealed or be revealed only in a designated way." Rule 26(c)(8). See also Shingara v. Skiles, 420 F.3d 301, 306 (3d Cir.2005) (Pursuant to Rule 26(c), "a court 'for good cause shown,' may, in certain circumstances, enter a protective order in the context of discovery."). See also Pansy v. Borough of Stroudsburg, 23 F.3d 772 (3d Cir.1994) (providing factors a court must consider before issuing a protective order).

Nothing in either of Landor's motions indicates that he is seeking a "protective order" of any matter in this litigation, and he has not explained what kind of protection he is requesting, or why such protection is warranted. There is simply no basis for the Court to enter any sort of protective order, at least in insofar as Mr. Landry's seeks a protective order of the type contemplated by Rule 26(c). Without further explanation of what kind of relief Landor is seeking, and because the Court is unable to perceive of what sort of protection could be due to Landor in an action that is presently subject to an order dismissing Plaintiff's claims, this motion will be denied.

### B.     There is No Basis to Stay or Continue this Lawsuit.

Plaintiff also seeks an order granting an open-ended stay of the litigation, or a continuance of his obligations as the Plaintiff in this lawsuit, in order to enable him to hire a private lawyer to represent him. (Doc. 67) In making this request, Landor does not represent that he has sought legal counsel, or that counsel's engagement on his behalf is likely to occur. Given the fact that after Landor filed this motion the District Court entered an order dismissing two of the three Defendants with prejudice, and further dismissed Plaintiff's claims against Defendant Hepner without prejudice provided that Landor acted with dispatch to file an amended complaint, we conclude it would be inappropriate to further delay the resolution of this matter.

Our decision in this regard is driven not only by the fact that the District Court has issued an order disposing of Plaintiff's claims, but also because Plaintiff appears to be improperly seeking a stay of his obligations in this action in order to prepare and prosecute entirely new claims of First Amendment retaliation that are not part of this litigation. To the extent Plaintiff wishes to bring claims alleging retaliation for the incidents alleged in January, February, March, and April of this year, he may seek to do so through a properly filed civil action. In the meantime, we will decline Plaintiff's an order that upsets the schedule set by the District Court for the Plaintiff to either file an amended complaint, or have his remaining claim against Defendant Hepner dismissed with prejudice.

### C. This Court Will Not Enter an Order Compelling Prison Officials to Provide Mr. Landor with Grievance Forms.

Finally, Landor has filed a motion that he entitled "motion to be heard". (Doc. 69) Review of this motion reveals that it is an attempt by Mr. Landor to have the Court compel prison officials at USP-Lewisburg to furnish Mr. Landor with grievance forms so that he can file an administrative complaint regarding the soy bean patty that was allegedly lost or destroyed.

In this order, we have already concluded that Plaintiff is inappropriately attempting to stay this litigation in order to, in part, include entirely new claims for First Amendment retaliation, claims that have never been properly filed against any party. In the "motion to be heard," Plaintiff tacitly concedes that he has not exhausted his administrative remedies with respect to this claim, and he requests the Court's assistance in obtaining the forms that he claims to require in order to file an *initial* grievance relating to this claim. Plaintiff alleges that some USP-Lewisburg officials have refused his requests for grievance forms that he wishes to file to pursue his administrative claims relating to the misplaced soy bean patty.

The Prison Litigation Reform Act, 42 U.S.C. § 1997 ("PLRA") requires that prisoners present their claims through an administrative grievance process prior to seeking redress in federal court. Specifically, the Act provides that:

> No action shall be brought with respect to prison conditions under [§ 1983], or any other federal law, by a

>prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). In accordance with the PLRA, prisoners must comply with exhaustion requirements with respect to any claim that arises in the prison setting, regardless of the type of claim asserted, or the relief sought. See Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Notably, however, in cases where prison officials refuse to provide grievance forms to an inmate, or otherwise thwart an inmate's ability to file administrative grievances, an inmate may be relieved of his obligation to exhaust administrative remedies before filing suit in federal court. See Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003).

In this case, Mr. Landor improperly seeks to involve this Court in an administrative dispute that concerns claims that are not pending before this Court. For this reason alone, we find it inappropriate for the Court to take any step towards compelling prison officials to furnish Landor with grievance forms that he seeks in order to file an initial grievance regarding a dispute over his legal mail. Furthermore,

we have no information as to why Mr. Landor may be unable to obtain grievance forms, and are unwilling to speculate on this matter or wade into issues of prison administration. In this regard, we are mindful that

> the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree. Most require expertise, comprehensive planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. For all of those reasons, courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.

Procunier v. Martinez, 416 U.S. 396, 404-05(1974), overruled by Thornburgh v. Abbott, 490 U.S. 401, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989). In light of these important considerations, and because Plaintiff has not properly presented any claims regarding alleged First Amendment violations in any event, Plaintiff's motion for an order compelling officials at USP-Lewisburg to provide him with grievance forms will be denied.[3]

---

[3] To the extent Landor is attempting to assert a constitutional claim on the basis that prison officials are not providing him with grievance forms or are otherwise not addressing his grievances, such a claim necessarily fails.

> Although prisoners have a constitutional right to seek redress of grievances as part of their right of access to courts, this right is not compromised by the failure of prison officials to address these grievances. Prisoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create a liberty interest requiring procedural protections under the

**III. ORDER**

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED THAT Plaintiff's motion for a continuance in order to hire an attorney (Doc. 67) and motion to be heard (Doc. 69) are DENIED.

                                          */s/ Martin C. Carlson*
                                          Martin C. Carlson
                                          United States Magistrate Judge

Dated: May 25, 2012

---

Fourteenth Amendment. Wilson v. Horn, 971 F.Supp. 943, 947 (E.D.Pa.1997), aff'd, 142 F.3d 430 (3d Cir.1998); McGuire v. Forr, Civ. A. No. 94–6884, 1996 WL 131130, at *1 (E.D.Pa. March 21, 1996), aff'd, 101 F.3d 691 (3d Cir.1996).

Booth v. King, 346 F. Supp. 2d 751, 761 (E.D. Pa. 2004).