PJS:WPP:cer

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAMON LANDOR,** | : | **NO. 1:11-CV-759** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Caldwell, J.)** |
| | : | **(Carlson, M.J.)** |
| **B. A. BLEDSOE, Warden;** | : | |
| **B. TRATE, Captain; and** | : | |
| **LT. HEPNER,** | : | |
| **Defendants** | : | **ELECTRONICALLY FILED** |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS AND/OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Respectfully submitted,

PETER J. SMITH
UNITED STATES ATTORNEY

/s/ WESLEY P. PAGE
WESLEY P. PAGE
Assistant U.S. Attorney
Bar No.  WV-10529
Cynthia E. Roman
Paralegal Specialist
240 West Third Street, Suite 316
241 Williamsport, PA 17701
717/221-4482 (Office)
717/221-2246 (Fax)
WESLEY.PAGE@USDOJ.GOV

Dated:  July 9, 2012

# TABLE OF CONTENTS

I.    Procedural History .........................................................................................1

II.   Factual Background .......................................................................................3

      A.    The Incident.......................................................................................3

      B.    The Disciplinary Action ..................................................................4

      C.    Procedures Regarding Use of Ambulatory Restraints .........................6

      D.    Defendant Hepner..............................................................................7

      E.    Affidavit of Muhammad Dye ...........................................................11

III.  Questions Presented........................................................................................12

IV.   Arguments........................................................................................................12

      Legal Standards

            1.    Failure to State a Claim.........................................................12

            2.    Summary Judgment ...............................................................14

      Arguments

      A.    The Court should dismiss the complaint because
            Landor's Claims are barred by the favorable termination
            Rule……………………………………………………………….14

      B.    Landor failed to establish an Eighth Amendment
            claim against Defendant Hepner……………………………………17

      C.    Defendant Hepner is entitled to qualified immunity …………….....23

V.    Conclusion…………………………………………………………………….25

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

<u>Abdul-Akbar v. Watson</u>,
4 F.3d 195 (3d Cir. 1993) ..............................................................................24

<u>Albiero v. City of Kankakee</u>, 246 F.3d 927 (7th Cir. 2001) .........................19

<u>Anderson v. Liberty Lobby, Inc.</u>,
477 U.S. 242 (1986)......................................................................................14

<u>Ashcroft v. Iqbal</u>,
___ U.S. ___, 129 S. Ct. 1937 (2009) .........................................................13

<u>Bell Atlantic Corp. v. Twombly</u>,
 550 U.S. 544 (2007).....................................................................................13

<u>Black Spotted Horse v. Else</u>,
767 F.2d 516 (8th Cir. 1985) .......................................................................18

<u>Brown v. J.G. Mravintz</u>,
Number Civ. A. 04-305, 2006 WL 3717417 (W.D. Pa. Dec. 14, 2006).......19

<u>Celotex Corp. v. Catrett</u>,
477 U.S. 317 (1986).....................................................................................14

<u>Clemente v. Allen</u>,
120 F.3d 703 (7th Cir. 1997) .......................................................................16

<u>Connolly v. Tennis</u>,
Civ. No. 1:CV-07-1681, 2008 WL 1869750
(M.D. Pa. April 23, 2008)............................................................................12

<u>Edwards v. Balisok</u>,
 520 U.S. 641 (1997).................................................................................15, 17

<u>Elder v. Holloway</u>,
510 U.S. 510 (1994).....................................................................................24

Harlow v. Fitzgerald,
457 U.S. 800 (1982)................................................................................. 23-24

Heck v. Humphrey,
512 U.S. 477 (1994)................................................................................. 14-15

Howell v. Cataldi,
464 F.2d 272 (3d Cir. 1972) ...........................................................................17

Hudson v. McMillian,
503 U.S. 1 (1992)..................................................................................... 17-19

Johnson v. Glick,
481 F.2d 1028 (2d Cir. 1973) ........................................................................17

Johnsrud v. Carter,
620 F.2d 29 (3d Cir. 1980) .............................................................................13

Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.,
20 F.3d 1250 (3d Cir. 1994) ...........................................................................12

Lora-Pena v. F.B.I.,
529 F.3d 503 (3d Cir. 2008) ...........................................................................16

Malley v. Briggs,
475 U.S. 335 (1986).......................................................................................24

McLaughlin v. Watson,
271 F.3d 566 (3d Cir. 2001) ...........................................................................24

Norman v. Taylor,
25 F.3d 1259 (4th Cir. 1994) ..........................................................................18

Pearson v. Callahan,
 555 U.S. 223 (2009).......................................................................................23

Ricketts v. Derello,
574 F. Supp. 645 (E.D. Pa. 1983)..................................................................18

Saucier v. Katz,
533 U.S. 194 (2001).........................................................................24

Siegart v. Gilley,
500 U.S. 226 (1991).........................................................................24

Spruill v. Gillis,
372 F.3d 218 (3d Cir. 2004) ...........................................................12

White v. Holmes,
21 F.3d 277 (8th Cir. 1994) ............................................................18

Whitley v. Albers,
475 U.S. 312 (1986)..................................................................... 17-18

Wilkinson v. Dotson,
544 U.S. 74 (2005)....................................................................... 15-16

Williams v. Hill,
74 F.3d 1339 (D.C. Cir. 1996).......................................................16

## FEDERAL STATUTES

42 U.S.C. § 1983.............................................................................14

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(6) ...................................................................12

Fed. R. Civ. P. 56...........................................................................14

Defendant, J. Hepner, Lieutenant, of the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg"), submits this brief in support of his Motion to Dismiss and/or, in the Alternative, for Summary Judgment.  The Court should dismiss this complaint in its entirety, and/or grant summary judgment in Defendant Hepner's favor because: (1) Landor's claims are barred by the favorable termination rule; (2) Landor failed to establish an Eighth Amendment claim; and (3) Defendant Hepner is entitled to qualified immunity.

## I.      Procedural History

In his first amended complaint, Landor raised <u>Bivens</u> claims alleging that the Warden, a captain, and Defendant Hepner, who is a lieutenant, violated his Eighth Amendment rights in connection with a July 5, 2010, use of force procedure at USP Lewisburg and the subsequent use of ambulatory restraints.  (Doc. 29, Am. Compl.)

Landor alleged that Defendant Hepner violated his constitutional rights when he:  (a) authorized a use of force team to place him in ambulatory restraints when his conduct did not justify it; (b) ordered the use of force team to apply the restraints with unnecessary tightness; (c) ordered the use of force team to place him in a cell that was not a proper observation cell, that had human waste on the walls, floor, toilet and sink, and that was inadequately ventilated.  (<u>Id.</u>)  Landor also alleged that when Defendant Hepner performed the first two-hour ambulatory

1

restraints check in cell 118, Defendant Hepner struck him in the groin with his knee, grabbed his testicles, told Landor he had five days to get his act together, and threatened to place Landor in four-point restraints if he cause more trouble. (Id.)

On April 12, 2012, Magistrate Judge Carlson issued a report and recommendation in which he recommended that the court grant Defendants' Motion to Dismiss and/or, in the Alternative, for Summary Judgment because:  (a) the favorable termination rule bars Landor's claims concerning the authorization of the use of force team; (b) Landor failed to state claims against the Warden and Captain Trate, and they lacked personal involvement in the alleged constitutional violations; and (c) Landor failed to support his claims that Defendant Hepner violated his constitutional rights.  (Doc. 66, Rep. & Recommendation.)  However, in light of Landor's pro se status, the magistrate judge recommended that Landor be permitted an opportunity to amend his claims against Defendant Hepner.[1]  (Id.) On May 17, 2012, the Court adopted the report and recommendation in its entirety. (Doc. 72.)

On June 6, 2012, Landor filed an amended complaint in which he reasserts the same claims against Defendant  Hepner, but provides no additional support for them.  (Doc. 74.)  Defendants filed a Motion to Dismiss and/or, in the Alternative, for Summary Judgment on June 25, 2012.  (Doc. 76.)  This brief is filed

---

[1]The court determined it would be futile to permit Landor an opportunity to amend his claims against the Warden and Captain Trate.

concurrently with Defendants' Statement of Material Facts to support that motion.

## II.  Factual Background

### A.      The Incident

Landor, who is currently incarcerated at the Special Management Unit ("SMU") at USP Lewisburg, became disruptive in his cell on July 5, 2010, when he refused to remove his arm from his food slot to allow staff to close and secure it.  (SMF ¶¶ 3-4, 9.)  Landor refused several staff orders to remove his arm from the food slot and threatened to throw feces on any staff who neared his cell.  (SMF ¶¶ 5, 16.)

Defendant Bledsoe was notified of Landor's actions and authorized a use of force team to be assembled to place Landor in ambulatory restraints.  (SMF ¶ 6.) The use of force team was assembled on July 5, 2010, at approximately 1:00 p.m., and as a result of the confrontation avoidance techniques implemented by the team, Landor was placed in restraints at approximately 1:10 p.m., after which he was removed from his cell, taken to the second floor shower area, visually searched and placed in new clothing.  (SMF ¶¶ 7-10.)

The entire use of force procedure was video recorded.   (SMF ¶ 8.) Defendant Hepner read a statement at the commencement of the video recording in which he described Landor's disruptive behavior that precipitated the use of force procedure, and noted that Landor has an extensive disciplinary history including

3

assaults, refusing orders, insolence toward staff, possessing dangerous weapons, and threatening bodily harm. (SMF ¶ 9.)   Due to his continued disruptive behavior, Landor remained in ambulatory restraints in cell 118 until July 10, 2010. (SMF ¶ 12.)

### B.   The Disciplinary Action

Defendant Hepner issued Incident Report 2036697 on July 5, 2010, charging Landor with the offenses of blocking any locking device, refusing an order and threatening bodily harm. (SMF ¶ 13.) A hearing was conducted on September 1, 2010, before a Disciplinary Hearing Officer, who expunged the charge for threatening bodily harm because he found it to be duplicitous with the other charges, but concluded that Landor committed the prohibited acts of blocking any locking device and refusing an order. (SMF ¶¶ 14-15.)

In so ruling, the DHO considered Defendant Hepner's accounting of the incident, as stated in the incident report which reflected:

> On 7/5/10 at 10:00 p.m. D-Block staff were attempting to retrieve the noon meal trays from LANDOR in cell 201. LANDOR placed his arm through the food tray slot and refused to allow staff to secure the slot. I immediately spoke with LANDOR and gave him several orders to remove his arm which he refused. LANDOR then threatened violence towards staff by stating, "I'm gonna start throwing shit at your people if you don't take care of this problem right now."

(SMF ¶ 16.)

4

The DHO also considered a written memorandum that Defendant Hepner submitted in which he stated:

> On July 5, 2010, at approximately 12:00 p.m., inmate Damon Landor, Reg. No. 28711-034 became disruptive while in his cell in D Unit. Specifically, inmate Landor refused to remove his arm from the food slot with negative results. Inmate Landor displayed signs of violence by stating he would assault any officer that came near his cell. [Another inmate] was in the cell but was compliant. Due to inmate Landor's refusal of staff's orders as well as his display of imminent violence, the Warden was notified and authorized a use of force team to be assembled to place inmate Landor in ambulatory restraints. At approximately 1:00 p.m., a use of force team was assembled and confrontation avoidance procedures were initiated with positive results. Inmate Landor was removed from cell 201 and escorted to the second floor shower. Inmate Landor was visually searched, placed in new clothes and placed in ambulatory restraints. He was escorted to cell 118 and placed inside without further incident. Inmate Landor sustained no injuries. No staff injuries were reported.

(SMF ¶17.)

The DHO noted that the July 5, 2010, incident represented Landor's fourth offense for a Code 208 violation of refusing an order and sanctioned Landor to sanctions which included disallowance of fifty-four days good conduct time for a Code 203 offense, and disallowance of an additional twenty-seven days good conduct time for a Code 203 offense.  (SMF ¶¶ 18-21.)

Although Landor exhausted administrative remedies with respect to the Eighth Amendment claim raised in his complaint, Landor did not appeal the DHO decision.  (SMF ¶¶ 22-25.)

C.      **Procedures Regarding Use of Ambulatory Restraints**

BOP policy indicates that it is sometimes necessary for staff to use force and restraints when an inmate displays signs of imminent violence in order to prevent the inmate from hurting themselves, staff, or others.  (SMF ¶ 26.)  Further, BOP policy directs that restraints should remain on the inmate until he regains self-control.  (SMF ¶30.)

In Landor's case, on July 5, 2010, the use of force team used confrontation avoidance techniques, which were successful, and Landor voluntarily submitted to the application of ambulatory restraints.  (SMF ¶¶ 10-11.)  Records reflect that it was necessary to maintain Landor in ambulatory restraints until July 10, 2010, because he continued to display disruptive, agitated and verbally aggressive behavior.  (SMF ¶  12.)

BOP policy requires that correctional officers check an inmate in ambulatory restraints every fifteen minutes, that lieutenants check the inmates every two hours, that medical staff check the inmate twice each eight-hour shift, and that psychology services check an inmate once in every 24-hour period.  (SMF ¶¶ 33-42.)  The record reflects that staff at USP Lewisburg complied with policy with respect to Landor by providing all of the required restraints checks.  (SMF ¶¶ 44-62.)  The records reflect that Landor sustained no injury during the use of force procedure, or while in ambulatory restraints.  (Id.)  Additionally, there is no

6

indication that Landor's wrists were cut by the restraints as is alleged in his complaint.   (Id.)   Finally, the records reflect that Landor was provided opportunities to use the toilet, and did so on seventeen occasions between July 5, 2010, and July 10, 2010, and that food was provided to him.  (SMF ¶¶ 49, 56.)

### D.   Defendant Hepner

Landor alleges that Defendant Hepner kneed him in the groin, grabbed his testicles, and threatened to place him in four-point restraints when he conducted the very first of the two-hour lieutenant restraints check on July 5, 2010.  (SMF ¶ 43.)  Landor's Central Office Administrative Remedy Appeal, which is attached to his complaint, states, "To this day I am still leaking pus from my penis from that incident." (Attach. to Doc. 1.)  Landor also alleges that D-Block Counselor, M. Edinger, accompanied Defendant Hepner when he performed the restraint check on July 5, 2010, and that he saw Defendant Hepner knee him in the groin and grab his testicles.  (SMF ¶  43.)

Conversely, Defendant Hepner submitted a declaration in which he specifically denies that he kneed Landor in the groin, grabbed his testicles, or threatened him.   (SMF ¶¶  58-61.)   With respect to the restraints check that Defendant Hepner performed on Landor on July 5, 2010, at 2:00 p.m., Defendant Hepner wrote, "Inmate is very agitated and verbally aggressive.  Stated 'you gonna let me out of these things bitch.'  Has not regained self control."  (SMF ¶¶ 58-60.)

7

Additionally, M. Edinger submitted a declaration which reflects that, although he assists with many restraints checks, he does not specifically recall the restraint check on Landor on July 5, 2010.  (SMF ¶¶ 63-67.)  M. Edinger also stated that while he does not recall the specific restraint check at issue here, he never witnessed Defendant Hepner knee Landor, or any other inmate, in the groin, grab his testicles, or threaten to four-point any inmate to the floor.  (Id.)  M. Edinger believes the documentation provided by Defendant Hepner in the Two-Hour Restraints check form, as described above, accurately reflects the check performed on Landor on July 5, 2010.  (SMF ¶ 67.)

Throughout the five days that Landor was restrained, none of the BOP staff members who performed the fifteen minute restraints checks, the two-hour lieutenant restraints checks, the medical assessments, or the psychology reviews reflect that Landor never informed anyone that Defendant Hepner kneed him in the groin or grabbed his testicles on July 5, 2010; nor do the records reflect that Landor complained about pain in his groin or testicles between July 5, 2010, and July 10, 2010.  (SMF ¶ 45.)

Likewise, Landor's extensive medical record is completely void of evidence that Landor sustained an injury to his groin or testicles on July 5, 2010.  (SMF ¶¶ 45-53, 70-84.)  However, on September 27, 2010, Landor submitted a "copout" to medical staff in which he complained about pus coming out of his penis.  (SMF ¶

71.)  On September 28, 2010, medical staff responded to Landor's "copout" dated

September 27, 2010, instructing him to be more specific about his complaint, and

to explain what happened.  (SMF ¶ 72.)

On September 28, 2010, Landor submitted a "copout" to medical staff in

which he states:

> I have been complaining on suffering with my medical problems.  On July 5, 2010, Lt. Hepner, knee me in the groin area.  Ever since then I been having pus coming out of my penis.  I shown PA Narrvo, and my new PA Almo how ever [sic] you spell his name.  When I use the bathroom it show up, and sometime when I wake up my penis head and boxer be all sticky.  When the incident first happen it use to hurt like crazy.  Now sometime pain come and go far as when one of my nuts just will move up on it own, that when the pain come in.  I try my best to avoid that pain right there, I have to pull it down to make it stop.

(SMF ¶ 73.)  Ferdinand N. Alama, MLP, recorded on Landor's September 28,

2010, "copout," "9/30/10 Seen on rounds."  (SMF ¶ 74.)

BOP medical records contain a "Clinical Encounter – Administrative Note"

entered by F. Alama, MLP, on September 30, 2010, which states, "Inmate is not in

pain nor showing signs of discomfort.  . . .  He agreed to work up with urinalysis

when available."  (SMF ¶ 75.)  However, on October 21, 2010, Landor refused to

undergo blood work and a urinalysis when it was offered to him.  (SMF ¶76.)

On January 19, 2011, more than six months after the July 5, 2010 incident at

issue in this civil action, Landor reported to USP Lewisburg's Clinical Director,

Kevin Pigos, M.D., who, with respect to the subjective portion of Landor's

evaluation, wrote:  "Complains of pain in his testicles since <u>June</u>.  No lump felt just a dull aching that is intermittent on both sides."  (SMF ¶ 77 (emphasis added).)  Dr. Pigos assessed Landor's complaint of testicular pain as "Scrotum, Unspec disorder of male genital organs," and ordered a urine test and a radiology test.  (SMF ¶¶ 78-80.)

On February 1, 2011, the Utilization Review Committee for USP Lewisburg Health Services approved Dr. Pigos' request for Landor to undergo a radiological test for his complaint of testicular pain.  (SMF ¶ 80.)  On March 14, 2011, Landor underwent a scrotum duplex ultrasound which revealed "no significant abnormality."  (SMF ¶¶ 81.)  Additionally, on April 4, 2011, Landor again refused to consent to blood work or to give a urine specimen.  (SMF ¶ 84.)

The BOP requires that all inmate allegations of staff abuse be referred for investigation, and Landor's allegations regarding Defendant Hepner were properly referred (OIA Case No. 2010 033686).  (SMF ¶ 68.)  Landor's allegations regarding Defendant Hepner were investigated; it was determined that no misconduct occurred, and the investigation (OIA Case No. 2010 033686) was closed.  (SMF ¶ 69.)

Landor also alleges that Defendant Hepner allowed him to be placed in cell 118, which had human waste on the floor and on the walls.  (Doc. 74 at 4.)  However, T. Wagner, the camera operator who videotaped the forced cell

extraction of Landor on July 5, 2010 did not observe any feces on the wall of cell 118. (SMF ¶¶ 94-95.) The video of the forced cell move shows a brown spot on the back wall, near the window. (SMF ¶ 96.) T. Wagner took photographs of cell 118 on November 8, 2011, which show brown spots on the walls which Mr. Wagner states are areas of chipped paint. (SMF ¶ 97.)

### E. Affidavit of Inmate Dye

Finally, Landor attached an affidavit from Inmate Muhammad Dye to his first amended complaint in which Inmate Dye supports Landor's allegations. (Doc. 29 at 9.) However, Inmate Day was not placed in the same cell as Landor until July 6, 2010 at 11:32 p.m., and he only remained there until 12:39 p.m. on July 7, 2010. (SMF ¶ 86.) Inmate Dye was not celled with Landor when the use-of-force team extracted Landor from cell D-201 on July 5, 2010, when the use-of-force team applied ambulatory restraints on Landor, when Landor was escorted to and placed in cell D-118, or when Defendant Hepner performed the first restraints check on July 5, 2010 at 2:00 p.m. (SMF ¶¶ 87-90.) However, Inmate Dye would have been present in cell 118 when Landor cursed at Defendant Hepner and told him to get out of his cell, and when Landor aggressively spoke to Defendant Hepner and told him that he would go on a hunger strike. (SMF ¶¶ 91-92.)

## III.  Questions Presented

A.      Should the court dismiss the complaint or grant summary judgment to Defendant Hepner because Landor's claims are barred by the favorable termination rule?

B.      Should the court grant summary judgment to Defendant Hepner because Landor failed to establish an Eighth Amendment claim?

C.      Should the court grant summary judgment to Defendant Hepner because he is entitled to qualified immunity?

Suggested Answers:  Affirmative

## II. Arguments

**Legal Standards**

### A.      Dismissal - Failure to State a Claim

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept as true all allegations in the plaintiff's complaint and all reasonable inferences that can be drawn from the complaint will be construed in the light most favorable to the plaintiff.  Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994).  "In determining whether a claim should be dismissed under Rule 12(b)(6), the Court should only look to the facts alleged in the complaint and its attachments without reference to other parts of the record."  Id.  A party, however, may submit "indisputably authentic documents" related to the administrative process to support a motion to dismiss without converting to a motion for summary judgment.  Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004); see also, Connolly v. Tennis, Civ. No. 1:CV-07-1681, 2008 WL 1869750, at *6

12

(M.D. Pa. April 23, 2008) (Rambo, J.) (copy attached).

The Rule 12(b)(6) movant carries the burden of showing the legal insufficiency of the claims asserted.  See Johnsrud v. Carter, 620 F.2d 29, 32-33 (3d Cir. 1980).  A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The court need not accept legal conclusions set forth as factual allegations.  See id. at 1965.

In Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (2009), the Supreme Court elucidated its holding in Twombly, that a complaint must contain "enough facts to state a claim to relief that is plausible on its face" to withstand a motion to dismiss.  Twombly, 550 U.S. at 570.  In Iqbal the Court reaffirmed that a complaint will not survive a dismissal motion where it contains "threadbare recitals of the elements of a cause of action, supported by conclusory statements," 129 S. Ct. at 1949, and that "unadorned, the-defendant-unlawfully-harmed-me" allegations are insufficient." Id.

**B.     Summary Judgment**

Summary judgment is appropriate when supporting materials, such as affidavits and other documentation show that there are no material issues of fact to be resolved and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986).   In Celotex, the Court held that "Rule 56(e) . . . requires that the non-moving party go beyond the pleadings by [his] own affidavits, or by 'depositions, answers to interrogatories and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324 (quoting Fed. R. Civ. P. 56).   Additionally, an opposing party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**Arguments**

**A.     The Court should dismiss the Complaint because Landor's claims are barred by the favorable termination rule.**

In Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), the United States Supreme Court held that a prisoner does not have a cause of action under 42 U.S.C. § 1983 seeking damages where success in the suit would effectively invalidate the prisoner's underlying conviction and sentence.  The Court adopted the favorable termination rule which provides that if the success of a § 1983 action for damages "would necessarily imply the invalidity of his conviction or sentence,"

14

his claims are cognizable only if he can prove that his conviction or sentence was reversed, invalidated, or called into question by the grant of federal habeas corpus relief.  Heck, 512 U.S. at 486-87.  The Court concluded that the prisoner's suit, which alleged that his conviction was obtained through unlawful investigatory practices and the destruction of exculpatory evidence, was an impermissible collateral attack because it could result in conflicting resolutions from parallel civil and criminal proceedings.  Heck, 512 U.S. at 484-486.

The Supreme Court has also applied the favorable termination rule to a state prisoner's § 1983 action seeking declaratory relief and damages from an alleged procedural defect in disciplinary proceedings.  Edwards v. Balisok, 520 U.S. 641, 643 (1997).  In Edwards, a prisoner had been sentenced to a loss of good time credits, however, the prisoner did not seek the restoration of the credits as relief.  Id. at 643-44.  The Court explained that the favorable termination rule applied regardless of the relief sought because "[t]he principle procedural defect" he alleged (the bias of the hearing officer) "would, if established, necessarily imply the invalidity of the deprivation of his good time credits."  Id. at 646-48.

In Wilkinson v. Dotson, 544 U.S. 74 (2005), the Supreme Court summarized the favorable termination rule as follows:

> A state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would

15

necessarily demonstrate the invalidity of the confinement or its duration.

Wilkinson, 544 U.S. at 81-82.[1]

In this case, Landor's claims, if established, would necessarily implicate the invalidity of his finding of guilt for having committed the prison offenses of blocking any locking device and refusing to obey an order, and the subsequent sanctions which included the loss of good time credits.  (SMF ¶¶ 12-20.)  In reaching his decision that Landor committed the prohibited acts, the DHO considered Landor's statement, but found the written evidence submitted by Defendant Hepner to be more credible.  (SMF ¶¶ 15-17.)

The DHO plainly rejected Landor's version of the incident.  (SMF ¶¶ 12-17.)  The DHO wrote:

> The DHO believed the information provided by the staff members involved in this case, as they derived no known benefit by providing false information.  Inmate LANDOR's actions during this incident initiated his placement into restraints for his hostile and disruptive behavior, and thus supporting the misconduct of codes 203 and 208.

(SMF ¶ 17.)

Thus, the favorable termination rule set forth in Heck, Edwards, and their progeny bars Landor's claims in this case, particularly his claim that Defendant

---

[1]Although Heck, Edwards, and Wilkinson involved civil rights actions brought by state prisoners under § 1983, the favorable termination rule has also been applied to bar civil rights claims pursuant to Bivens.  Lora-Pena v. F.B.I., 529 F.3d 503, 506 n.2 (3d Cir. 2008) (citing Williams v. Hill, 74 F.3d 1339, 1341 (D.C. Cir. 1996)); see also Clemente v. Allen, 120 F.3d 703, 705 (7th Cir. 1997).

Hepner authorized a use of force team to place him in ambulatory restraints when his conduct did not justify it, because success in this action would necessarily imply that the sanctions imposed against him (for blocking any locking device and refusing to obey an order) are invalid.  Edwards, 520 U.S. at 646-48.

**B.      Landor failed to establish an Eighth Amendment Claim against Defendant Hepner.**

In Hudson v. McMillian, 503 U.S. 1 (1992), the Supreme Court held that "whenever prison officials stand accused of using excessive physical force . . . the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Id. at 6-7.  In reaching this conclusion, the Court specifically rejected a "deliberate indifference" standard for judging claims of excessive use of force, finding that standard inappropriate when corrections officials must make decisions "in haste, under pressure, and frequently without the luxury of a second chance."  Id. at 6 (quoting Whitley v. Albers, 475 U.S. 312 (1986)).

Consistent with this standard, not all tortious conduct which occurs in a prison rises to the level of an Eighth Amendment violation.  See Howell v. Cataldi, 464 F.2d 272, 277 (3d Cir. 1972).  "Not every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates a prisoner's constitutional rights."  Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973).  Indeed, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishment

necessarily excludes from constitutional recognition de minimus uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"  <u>Hudson</u>, 503 U.S. at 9-10 (quoting <u>Whitley v. Albers</u>, 475 U.S. at 327).

While an inmate need not suffer serious injuries to set forth a claim of excessive force, the extent of an injury suffered is a factor that may be considered in determining whether the use of force is excessive.  <u>See</u> <u>Hudson</u>, 503 U.S. at 9. In addition, courts considering claims of excessive force have generally held that a single, isolated incident does not rise to the level of a constitutional violation.  <u>See, e.g.</u>, <u>Norman v. Taylor</u>, 25 F.3d 1259, 1262-64 (4th Cir. 1994);  <u>White v. Holmes</u>, 21 F.3d 277, 280-81 (8th Cir. 1994);  <u>Black Spotted Horse v. Else</u>, 767 F.2d 516 (8th Cir. 1985);  <u>Ricketts v. Derello</u>, 574 F.Supp. 645 (E.D. Pa. 1983).

Landor alleges that Defendant Hepner assaulted and injured him. Specifically, he claims Defendant Hepner randomly "kneed Landor in the groin area" and "grabbed his testicles."  (Doc. 1, Doc. 29, Doc. 74.)  Landor makes this statement, but provides absolutely no evidence to support his claim:  both Hepner and the person Landor alleges witnessed the incident provided a sworn declaration that these actions did not occur; Landor failed to mention anything resembling this allegation in thirty-three various medical assessments over five days; he failed to mention it during sixty-three two-hour checks by various lieutenants, 940 checks

by various officers, when he was seen four times by psychology staff, or when he was seen by a variety of medical staff over the next year generating 448 pages of medical records.  (SMF, generally.)

This is not a case in which arguments can be made on behalf of Defendant Hepner that some amount of force he used was proper, or that it was used in a good faith effort to restore order pursuant to the "core judicial inquiry" set forth in Hudson v. McMillian, 503 U.S. 1 (1992).  In this case, there was no force used and no injury suffered.  Landor has falsely accused Defendant Hepner of something which did not occur.  Landor has provided no evidence other than his unsupported accusation, and the record belies his claim.

"The summary judgment motion is an evidence testing device to see is there is sufficient evidence to support a party's position with respect to an issue for which that party bears the burden of proof at trial so as to justify holding a trial." Brown v.  J.G. Mravintz, No. Civ. A. 04-305, 2006 WL 3717417, *2  (W.D. Pa. Dec. 14, 2006).  Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events."  Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001).

While Landor alleges an Eighth Amendment violation against Defendant Hepner, he has failed to put forth evidence that Defendant Hepner committed a constitutional violation.

Specifically, Landor first alleges that Defendant Hepner authorized an unnecessary use of procedure against him, but the record reflects that Warden Bledsoe, who was not present at USP Lewisburg on July 5, 2010, was briefed on Landor's conduct, and Warden Bledsoe authorized the calculated use of force. (SMF ¶ 6.)

Second, Landor alleges that Defendant Hepner ordered the use of force team to apply restraints with unnecessary tightness. (Doc. 29, Doc. 74.) However, the record reflects that both Defendant Hepner and a medical staff member checked the restraints immediately after they were applied, so Defendant Hepner had the assurance that medical staff had ascertained that Landor's restraints were not so tight as to cause him harm. (SMF ¶¶ 45-49.) The medical record reflects that Landor's circulation at the site of the restraints was good and that Landor voiced no complaints. (Id.)

Third, Landor alleges that Defendant Hepner ordered the use of force team to place him in cell 118, which is not a proper "observation" cell, and where the walls, floor, toilet and sink had human waste on them that could be easily seen. (Doc. 29.) The record in this case includes the use of force video, the declaration

20

of the camera operator during Landor's forced cell move, and photographs of cell 118 which indicate that the spots that were visible in cell 118 were caused by flaking paint, not human waste.  (SMF ¶¶ 93-97.)  Landor also complained that cell 118 was extremely hot, and without ventilation.  (Doc. 29, 74.)  In his first amended complaint, Landor alleged that he asked the use of force team to open the window, and they refused.  (Doc. 29.)  He does not state this claim in the amended complaint he filed on June 6, 2012.   (Doc. 74.)   The use of force video demonstrates that Landor never asked for the window to be opened.  (SMF ¶12.)

Landor alleges that BOP staff intentionally put inmates in cell 118, which is not in the vision of surveillance video, so that they may inflict harm on inmates. (Doc. 74 at 4.)   BOP policy does not require that an inmate be placed in an "observation" cell with a camera while restrained.  (SMF ¶ 42.)

Finally, Landor's bald allegations that Defendant Hepner kneed him in the groin, grabbed his testicles, and told him that he would be restrained for five days when Defendant Hepner performed the first restraints check on July 5, 2010, are completely unsupported by the voluminous record in this case.  (SMF, generally) Defendant Hepner issued a declaration stating that he did not knee Landor in the groin or grab his testicles.  (SMF ¶¶ 58-61.)

In his first amended complaint, Landor stated that M. Edinger was present when Defendant Hepner performed the first restraints check on July 5, 2010.

21

(Doc. 1, Doc. 29.)  He did not repeat this statement in the amended complaint he filed on June 6, 2012.  (Doc. 74.)  M. Ediniger provided a declaration that states that although he cannot specifically recall the restraints check at issue, that M. Edinger has never witnessed Defendant Hepner kneeing an inmate in the groin or grabbing an inmate's testicles.  (SMF ¶¶ 63-67.)

Lastly, Landor attached an affidavit of Inmate Muhammad Dye to his first amended complaint.  (Doc. 29.)  He did not refer to it in the amended complaint he filed on June 6, 2012.  (Doc. 74.)  Inmate Dye was only present in cell 118 from July 6, 2010, at 11:32 p.m. until July 7, 2010, at 12:39 p.m., but was not present at the time the first restraints check was performed, and since he was only present in the cell for a period of thirteen hours, the credibility of his affidavit is suspect since the record reflects that Dye would have witnessed Landor cursing at Defendant Hepner, ordering him to get out of his cell, and declaring a hunger strike.  (SMF ¶¶ 85-92.)

Finally, Defendants provided Landor's medical record as an exhibit.  (SMF ¶¶ 70-84.)  The medical record indicates that Landor sustained no injuries, was properly monitored, and medically assessed.  (Id.)  The medical record reveals that Landor did not report that Defendant Hepner had kneed him in the groin or grabbed his testicles until September 27, 2010, nearly three months after the forced cell move.  (SMF ¶ 71.)  On September 30, 2010, medical staff examined Landor

and noted that Landor was not in pain or showing signs of discomfort.  (SMF ¶ 75.)  In January 2011, Landor told medical staff that he had been experiencing pain in his testicles since June, even though the incident at issue in this action occurred on July 5, 2010.  (SMF ¶77.)  Medical staff ordered blood work and a urinalysis, but Landor refused to consent to the tests.  (SMF ¶¶ 76, 84.)  A March 14, 2011, scrotum duplex ultrasound revealed "no significant abnormality."  (SMF ¶ 80-81.)

Therefore, the court should grant summary judgment to Defendant Hepner.

## C.     Defendant Hepner is entitled to qualified immunity.

In Pearson v. Callahan, 555 U.S. 223 (2009), the Supreme Court held that district courts no longer have to find a violation of a constitutional right first, but rather can find that a defendant enjoys qualified immunity by determining whether the right asserted was clearly established without ever addressing whether there was a violation of a constitutional right.  See id.  Thus, this Court can address whether or not a reasonable official would find that Defendant Hepner's conduct was illegal or even unreasonable under the circumstances without addressing whether Landor asserted a constitutional violation.

Here, Defendant Hepner did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "'[Q]ualified immunity' affords 'protection to all but the plainly incompetent or those who knowingly violate the law.'"

23

McLaughlin v. Watson, 271 F.3d 566, 570 (3d Cir. 2001) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).  Government officials performing discretionary functions are afforded qualified immunity from civil damages in suits brought pursuant to Bivens.  See Harlow, 457 U.S. at 819 (concerning a 42 U.S.C. § 1983 case, but the same analysis applies).  The primary purpose of affording public officials the privilege of qualified immunity "is to protect them 'from undue interference with their duties and from potentially disabling threats of liability.'" Elder v. Holloway, 510 U.S. 510, 514 (1994) (quoting Harlow, 457 U.S. at 806).

When a federal defendant raises qualified immunity in a Bivens action, the plaintiff cannot maintain the action unless the plaintiff can show that the defendant violated a clearly established constitutional right.  See Siegart v. Gilley, 500 U.S. 226, 232-33 (1991); and see Abdul-Akbar v. Watson, 4 F.3d 195, 202 (3d Cir. 1993).  This inquiry focuses on whether a reasonable official would have found the defendant's conduct to be illegal.  See id. at 205.  "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." Saucier v. Katz, 533 U.S. 194, 199 (2001).

The record in this case, as discussed in the argument opposing Landor's Eighth Amendment claims against Defendant Hepner, completely refutes Landor's allegations and establishes that Defendant Hepner's conduct with respect to Landor was lawful at all times material to this action.

Therefore, this court should dismiss the claims, or grant summary judgment to Defendant Hepner because he is entitled to qualified immunity.

## V.  Conclusion

For the reasons set forth above, Defendant Hepner asks this court to dismiss the complaint, and/or, in the alternative, grant summary judgment to him.

Respectfully submitted,

PETER J. SMITH
UNITED STATES ATTORNEY

/s/ WESLEY P. PAGE
WESLEY P. PAGE
Assistant U.S. Attorney
Bar No.  WV-10529
Cynthia E. Roman
Paralegal Specialist
242 West Third Street, Suite 316
243 Williamsport, PA 17701
717/221-4482 (Office)
717/221-2246 (Fax)
WESLEY.PAGE@USDOJ.GOV

Dated:  July 9, 2012

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAMON LANDOR,** | : | **NO. 1:11-CV-759** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Caldwell, J.)** |
| | : | **(Carlson, M.J.)** |
| **B. A. BLEDSOE, Warden;** | : | |
| **B. TRATE, Captain; and** | : | |
| **LT. HEPNER,** | : | |
| **Defendants** | : | **ELECTRONICALLY FILED** |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on July 10, 2012, served a copy of the attached

BRIEF IN SUPPORT OF MOTION TO DISMISS AND/OR,
IN THE ALTERNANATIVE, FOR SUMMARY JUDGMENT

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

Addressee:

Damon Landor
Reg. No.  28711-034
USP Lewisburg
P.O. Box 1000
Lewisburg, PA 17837

/s/ Cynthia E. Roman
CYNTHIA E. ROMAN
Paralegal Specialist