## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAMON LANDOR, | : | |
| | : | |
| Plaintiff | : | Civil No. 1:11-CV-759 |
| | : | |
| v. | : | (Judge Caldwell) |
| | : | |
| B.A. BLEDSOE, Warden; | : | (Magistrate Judge Carlson) |
| B. TRATE, Captain; and | : | |
| LT. HEPNER, | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

## I.   INTRODUCTION

Now pending before the Court is a motion by Lieutenant Hepner, the lone remaining defendant in this action, to dismiss this complaint or, in the alternative, for summary judgment on Landor's remaining claims. The motion is fully briefed and has been referred to the undersigned for preparation of a report and recommendation. We have carefully considered the briefs and the evidence submitted in support of the motion, and we conclude that the plaintiff has failed to correct the flaws we had identified in this complaint, or sufficiently address the pleading and evidentiary deficiencies that we previously noted for him in our prior report and recommendation that led to the dismissal of most of the plaintiff's claims with prejudice, and to the dismissal of the claims against Lieutenant Hepner without prejudice. We continue

to find that the plaintiff has failed to adduce sufficient evidence to support his claims in this case – something that was expressly highlighted in our previous report and recommendation. For these reasons, and as explained more fully below, we recommend that the Court grant the motion, enter judgment in Lieutenant Hepner's favor, and close the case.

## II.    BACKGROUND

### A.    Procedural History

This is a <u>Bivens</u>[1] action brought by Damon Landor, an inmate in the Special Management Unit at the United States Penitentiary at Lewisburg ("USP-Lewisburg"). In his first amended complaint, Landor alleged that Warden B.A. Bledsoe, Captain Trate, and Lieutenant Hepner at USP-Lewisburg subjected him to unlawful excessive force in July 2010, by having him removed from his prison cell and placed in ambulatory restraints for a period of five days after the plaintiff was found to have become non-compliant and threatening to prison staff. (Doc. 29.) Specifically, in that pleading Landor claimed that the defendants were liable for authorizing his removal from his cell with force, and using ambulatory restraints against him between

---

[1] <u>Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388, 397 (1971) (a citizen suffering a compensable constitutional injury may invoke federal question jurisdiction to seek an award of monetary damages against federal agent).

July 5, 2010, and July 10, 2010, after he refused orders to remove his arm from the food slot that he was obstructing, and after he threatened to throw feces on any staff member who came near his cell.

In addition, Landor alleged that Lieutenant Hepner violated his constitutional rights in the following specific ways: (a) authorizing a use of force team to place Landor in ambulatory restraints when his conduct did not justify it; (b) ordering the use of force team to apply the restraints with unnecessary tightness; and (c) ordering the use of force team to place him in a cell that was not properly ventilated, that had human waste on the walls, and which was not proper observation cell. (Id.) Finally, Landor alleged that when Hepner performed the first two-hour ambulatory restraints check in cell 118, Defendant Hepner struck him in the groin with his knee, grabbed his testicles, and told Landor that he had five days to collect himself, and threatened to place Landor in four-point restraints if caused more trouble. (Id.)

Defendants moved for dismissal or summary judgment on Plaintiff's claims on October 27, 2011, and served Plaintiff with their statement of material facts and brief in support of the motion on November 10, 2011. (Docs. 33, 39, 40.) The Court entered an order directing Landor to file a responsive brief by December 8, 2011. (Doc. 43.) Landor failed to respond by this date, but later informed the Court that he was "having problems with the administration" at the prison, and claimed that in late

3

November 2011, prison officials confiscated his legal materials and other property, thereby rendering him unable to respond to the motion. (Doc. 45.) In response, the Court entered an order directing the defendants to provide Landor with additional copies of the motion, brief, and statement of facts by January 6, 2012, and directed Landor to file a responsive brief by January 31, 2012. (Doc. 49.) Landor was served with these documents a second time on January 5, 2012. (Doc. 50.)

On January 24, 2012, Landor moved for an extension of time to respond to the motion, and the Court directed the plaintiff to respond on or before February 14, 2012. (Docs. 52, 53.) On February 6, 2012, the Court again enlarged Landor's response deadline to February 27, 2012, and directed the defendants to make inquiries to ensure that the plaintiff had been given access to legal materials consistent with the security needs of the prison. (Doc. 55.)

After Landor again failed to file a response in accordance with the Court's orders, we entered an order directing the defendants to file a document with the Court explaining whether Landor had been given access to his legal materials, consistent with the security needs of the prison, since entry of the February 6, 2012 order. (Doc. 58.) Defendants timely responded, and informed the Court that although Landor's personal property had been removed from his cell on January 27, 2012, as part of an official investigation, it had been returned to him on February 7, 2012. (Doc. 59.)

Furthermore, the defendants reported that Landor spent 14.6 hours in the prison law library since December 1, 2011, including four hours on January 27, 2012, two and one-half hours on January 31, 2012, and more than three and one-half hours on February 22, 2012. (Id.)

Despite having had notice of the defendants' dispositive motion since November 2011, and despite having had access to his legal materials and the ability to conduct legal research in the prison law library for several months, Landor inexplicably failed to file a brief in response to the motion. Upon consideration, we concluded that notwithstanding the brief period when he was deprived of his legal materials, Landor had sufficient time and opportunity to file a response, and he had unreasonably failed to do so. Accordingly, we found it appropriate to consider the motion as filed, and recommended that the district court grant the motion, dismiss the claims against Warden Bledsoe and Captain Trate with prejudice, and dismiss the claims against Lieutenant Hepner without prejudice to Landor attempting to file another amended complaint to address the deficiencies we had identified with respect to the claims against that defendant. (Doc. 66.)

The district court adopted the report and recommendation in its entirety in an order issued April 17, 2012. (Doc. 72.) On June 6, 2012, Landor filed a motion to

amend the complaint, which the Court and Lieutenant Hepner have construed as an amended complaint filed consistent with the district court's order. (Doc. 74.)

In the latest iteration of the complaint, Landor confines his allegations to claims against Lieutenant Hepner, which remain almost entirely unchanged from those alleged in the prior pleading. (Id.) Landor's amended complaint provides no additional evidentiary support for his claims, and otherwise fails to address the deficiencies that were highlighted in our prior report and recommendation.

On June 25, 2012, Defendants filed a motion to dismiss and/or, in the alternative, for summary judgment. (Doc. 76.) Defendants filed their brief in support of the motion on July 9, 2012, along with a statement of undisputed material facts and citation to record evidence. (Docs. 77, 78.) Landor filed a brief in opposition to the motion on August 24, 2012, (Doc. 91), to which Defendant Hepner replied on September 10, 2012, (Doc. 92).

## B.   Factual Background[2]

_____

[2]   The factual background set forth in this report is taken principally from defendants' uncontested statement of material facts submitted pursuant to Local Rule 56.1 in support of their motion for summary judgment. (Doc. 39, Defendants' Statement of Facts) ("SMF"). In their thorough submissions, defendants have attached voluminous documents in support of the statement of facts, which we have reviewed to ensure that the factual representations are supported with evidence. For simplicity, we have generally declined to cite in this report to each piece of evidence that the defendants have identified and offered in support of their factual assertions, but instead have in most instances cited only to

Damon Landor was convicted in the Eastern District of Louisiana of trafficking cocaine, and was sentenced to serve a 120-month prison term with an eight-year period of supervised release to follow. (SMF ¶ 1.) Landor is projected to be released from federal custody on August 16, 2013. (Id. ¶ 2.) Landor is presently incarcerated in the SMU at USP-Lewisburg where he has been held since May 11, 2010, following his transfer from the United States Penitentiary in McCreary, Kentucky. (Id. ¶ 3.)

On July 5, 2010, Landor was found to have become disruptive in his cell in USP-Lewisburg's D-Block Unit, when he refused to remove his arm from the food tray slot on his door, and refused to allow staff to close and secure the tray slot. (Id. ¶ 4.) In response, Lieutenant Hepner spoke with Landor about his refusal to remove his arm, and gave him several orders to comply with orders to discontinue blocking his food tray. (Id. ¶ 5.) Landor refused to comply with Lieutenant Hepner's orders. (Id.)

Following this incident and Landor's persistent refusal to follow instructions from Lieutenant Hepner, Warden Bledsoe was informed about the situation, and the warden authorized a use of force team to be assembled to remove Landor from his cell and have him placed in ambulatory restraints. (Id. ¶ 6.) Pursuant to this authorization, a use of force team was assembled at 1:00 p.m. (Id. ¶ 7.) The use of

the relevant paragraphs contained within the statement of material facts itself.

force procedure was video recorded.[3]  (Id. ¶ 8.)  Before the use of force team entered

Landor's cell, Lieutenant Hepner made the following recorded statement, which puts

into context the truculent behavior that led to the use of force team's assembly, and

indicated what the use of force team could expect to find upon entry:

> My name is Lieutenant James Hepner.  The date is July 5, 2010.  The
> time is now 1:00 p.m.  We are currently in the Special Management
> Unit, specifically Dog-Block USP Lewisburg as a result of inmate
> Damon Landor, Reg. No. 28711-034, engaging in disruptive behavior
> and displaying signs of imminent violence.  Specifically, at
> approximately 12:00 p.m., Dog-Block staff were collecting food trays
> from the noon meal when inmate Landor, who is housed in  Dog-Block
> cell 201.  Upon handing out the food trays, Inmate Landor refused to
> allow the staff to secure the food tray slot by placing his arm through the
> slot.  I spoke with Inmate Landor immediately after this occurred.  He
> refused to allow me to secure the food tray slot and stated that he would
> start throwing items at staff if they walk on the range.  Inmate Landor
> was extremely agitated and verbally aggressive while I was speaking
> with him.  Inmate Landor is a 31-year-old black male with SEG
> assignments of assaulting police officers.  He has an extensive
> disciplinary history to include assaults, refusing orders, insolence toward
> staff, possessing dangerous weapons and threatening bodily harm.  He
> is an in-custody, high-security inmate. . . .
>
> Warden Bledsoe has been briefed on the situation and has given orders
> to assemble a use-of-force team to place Inmate Landor in ambulatory
> restraints due to his disruptive behavior and displaying signs of
> imminent violence towards staff. The Warden has also authorized the
> use of low-impact foam baton rounds by way of a L-8 35 mm launcher
> to be dispensed against inmates Landor and [name omitted] if they do
> not comply with staff orders to submit to restraints.  Chemical agents

---

[3] Defendants have provided the Court a copy of the video recording under
seal in connection with their motion for summary judgment.

will not be utilized due to Inmate [name omitted] being asthmatic. It is expected that Inmate [name omitted] will comply with staff orders and submit to restraints in order for Inmate Landor to be removed from the cell. But if Inmate [name omitted] does not comply with staff orders, the Warden has authorized his placement into ambulatory restraints also.

(Id. ¶ 9.)

Thereafter, during a process of confrontation avoidance initiated by the use of force team, Landor submitted to restraints, was removed from cell 201, and was escorted to the shower area on the second floor of the unit where he was visually searched, scanned with a metal detector, and placed in new clothing. (Id. ¶ 10.) Landor was placed into ambulatory restraints at approximately 1:10 p.m., and escorted to Cell 118. (Id. ¶ 11.) As a result of his aggressive behavior, Landor remained in the ambulatory restraints until 6:00 p.m. on July 10, 2010. (Id. ¶ 12.)

Defendant Hepner has submitted a Discipline Hearing Officer Report ("DHO Report") that reflects that he issued Incident Report 2036697 on July 5, 2010, charging Landor with the offenses of blocking any locking device, refusing an order, and threatening bodily harm. (Doc. 1, Attach., DHO Report, 10-12.) During the DHO hearing on September 1, 2010, Landor stated that he "was put into restraints for five days and I didn't say anything and I didn't stick my arm out." (Id.) The DHO expunged the charge for threatening bodily harm because he found it to be duplicitous

of other charges, but ultimately concluded that Landor committed the charged offenses of blocking any locking device and refusing an order. (Id.)

In his decision, the DHO considered Defendant Hepner's statement in the incident report, which the DHO paraphrased as follows:

> On 7/5/10 a 10:00 p.m. D-Block staff were attempting to retrieve the noon meal trays from LANDOR in cell 201. LANDOR placed his arm through the food tray slot. I immediately spoke with LANDOR and gave him several orders to remove his arm which he refused. LANDOR then threatened violence towards staff by stating , "I'm going to start throwing shit at your people if you don't take care of this problem right now."

(Id. ¶ 16.) In addition, the DHO considered Defendant Hepner's memorandum, which provided that:

> On July 5, 2010, at approximately 12:00 p.m., inmate Damon Landor, Reg. No. 28711-034 became disruptive while in his cell in D Unit. Specifically, inmate Landor refused to remove his arm from the food slot with negative results. Inmate Landor displayed signs of violence by stating he would assault any officer that came near his cell. [Another inmate] was in the cell but was compliant. Due to inmate Landor's refusal of staff's orders as well as his display of imminent violence, the Warden was notified and authorized a use of force team to be assembled to place inmate Landor in ambulatory restraints. At approximately 1:00 p.m., a use of force team was assembled and confrontation avoidance procedures were initiated with positive results. Inmate Landor was removed from cell 201 and escorted to the second floor shower. Inmate Landor was visually searched, placed in new clothes and placed in ambulatory restraints. He was escorted to cell 118 and placed inside without further incident. Inmate Landor sustained no injuries. No staff injuries were reported.

(Id. ¶ 17.)  In his decision concluding that Landor had committed the violations of

blocking a locking device and refusing to obey an order, the DHO stated:

> The DHO believed the information provided by the staff members
> involved in this case, as they derived no known benefit by providing
> false information.  Inmate LANDOR's actions during this incident
> initiated his placement into restraints for his hostile and disruptive
> behavior, and thus supporting the misconduct of codes 203 and 208.

(Id. ¶ 18.)  In addition, the DHO observed that the incident on July 5, 2010, was

Landor's fourth offense of a Code 208 violation of refusing an order.  (Id. ¶ 19.)

Finding the Landor had violated Code 203 and 208, the DHO imposed

sanctions for each violation.  For violating Code 203, the DHO sanctioned Landor to:

(a) 30 days disciplinary segregation; (b) disallowance of 27 days of good conduct

time; and (c) impoundment of personal property for two months.  (Id.)  For the Code

208 violation, the DHO sanctioned Landor to: (a) 60 days disciplinary segregation;

(b) disallowance of 54 days good conduct time; (c) eight months loss of commissary

privileges; and (d) eight months loss of phone privileges.  (Id. ¶¶ 20-21.)  Landor was

provided with a copy of the DHO's report on September 8, 2010.  (Id. ¶ 22.)

Landor subsequently exhausted his available administrative remedies with

respect to his claims that the defendants subjected him to cruel and unusual

punishment due to the use of ambulatory restraints following the July 5, 2010

incident.  However, Landor did not exhaust administrative remedies with respect to

11

the DHO's disciplinary findings and sanctions. (Id. ¶¶ 23-24; Doc. 77, Ex. 1, Cunningham Decl., ¶¶ 15-16 and Attach 11, SENTRY Report.)

BOP policy provides that corrections staff may sometimes need to use force and restraints against inmates when inmates display signs of imminent violence, in order to prevent inmates from harming themselves, staff, or other inmates. (Id. ¶ 27.) The same policy instructs that once an inmate is placed in restraints, the restraints should remain on the inmate until he regains self-control. (Id. ¶ 31.) The BOP policy provides the following illustration of the appropriate use of ambulatory restraints:

> An example of such situations is when an assaultive incident occurred quickly and ended, and the inmate is no longer displaying signs of violence or aggressiveness. Using ambulatory restraints for a period of time may be appropriate for protecting staff and others, pending an assessment by staff to determine whether the inmate has regained self-control.

> Staff should look for a pattern of non-disruptive behavior over a period of time as an indication the inmate has regained self-control and is no longer a disruptive threat. Additionally, the 15 minute and two-hour logs should be reviewed to support any decision concerning the release of an inmate in restraints. Inmates asleep at the time of two-hour review will be awakened to assess their condition.

> If the situation dictates the need for more restrictive or secure restraints, i.e., the inmate's behavior becomes increasingly aggressive, staff must determine the type of progressive restraints to be used (hard restraints with or without waist chain or waist belt, four-point soft restraints with hard restraints used for securing the inmate to the bed, or four-point hard restraints).

(Id. ¶ 34.)

When an inmate is placed in ambulatory restraints, BOP policy provides that staff shall check on a restrained inmate at least every fifteen minutes, in order to ensure that the restraints are not hampering the inmate's circulation, and for the inmate's general welfare. (Id. ¶ 35.) Staff are required to document the 15-minute checks using the Fifteen-Minute Restraints Check Form. (Id. ¶ 36.) In addition, when an inmate is placed in ambulatory restraints, BOP policy requires a lieutenant to make a review of the inmate every two hours in order to determine "as soon as possible, that the inmate has regained self-control and may be placed in lesser restraints." (Id. at ¶¶ 37-38.) The lieutenants who conduct the two-hour checks are required to document their findings on the Two-Hour Lieutenant Restraints Check Form (24 Hours). (Id. ¶ 39.)

BOP policy also requires that when an inmate is placed in ambulatory restraints, qualified health personnel shall initially assess the inmate to ensure appropriate breathing and response, and to ensure that the restraints have not restricted or impaired the inmate's circulation. (Id. ¶ 40.) The same policy requires that health services staff document the reviews they conduct twice during each eight-hour shift on the Health Services Restraint Review Form, and document the following: date and time of examination; examining staff member; body position;

restraints (adequate circulation); vital signs (blood pressure, respiration, and temperature); medication; injuries; the inmate's intake, output, hydration, etc.; possible medical reasons for behavior; deterioration of inmate's health; and any other significant findings and comments. (Id. ¶ 41.) BOP policy does not require that inmates who are placed in ambulatory restraints be placed in an observation cell equipped with camera equipment. (Id. ¶ 42.)

In his most recent complaint, Landor alleges that:

Two hour restraint check, Lieutenant Hepner, order Landor to stand against the back cell wall [in Cell 118], as the cell door open and Lieutenant Hepner enter the cell and inquire from Landor about the problem upstairs. Landor was explaining about the food tray missing the peanut butter substitute in replaces of the soy bean pattie. Lieutenant Hepner, was checking Landor restraints, while Landor was talking, and our of nowhere, Lieutenant Hepner, kneed Landor in the groins and Landor fell on to the steel bed. Lieutenant Hepner, grabbed Landor by the tessicles [sic] and told Landor (if he have any more trouble out of Landor in the "SMU Program," about some soy bean,) Lieutenant Hepner, alleged he would personally "four point" or "spread eagle" Landor ass to the floor. Lieutenant Hepner, let go of Landor tessicles, [sic] Lieutenant Hepner advised Landor that he had five day in [hard ambulatory restraints] to get his act right.

(Doc. 74, Am. Compl., ¶ 14.) In a prior iteration of the complaint, Landor additionally claimed Counselor M. Edinger, another employee at USP-Lewisburg,

was present at the entry of the cell when this occurred; however, he has omitted this allegation in the most recent version of the complaint.[4]  (Doc. 29, at 7.)

In contrast to this allegation, Defendant Hepner has submitted voluminous records from the prison that overwhelmingly discredit Landor's allegations of abuse at the hands of Lieutenant Hepner.  These records show that in compliance with BOP policy, correctional officers at the prison checked Landor every fifteen minutes while he was in restraints and documented their observations on the Fifteen-Minute Restraints Check Form.  (Doc. 77, Ex. 1, Cunningham Decl., ¶ 11; Attach. 5, Fifteen-Minute Restraints Check Form.)

During the five days that Landor was restrained, none of the BOP staff members who performed the fifteen-minute restraint checks, the two-hour lieutenant checks, the medical assessments, or the psychology reviews indicate that Landor at any time informed anyone that Defendant Hepner kneed him in the groin or grabbed his testicles on July 5, 2010.  Likewise, the records do not reflect that Landor ever complained about pain in his groin or testicles between July 5, 2010, and July 10, 2010.  (Doc. 77, Ex. 1, Cunningham Decl.; Attach. 2, 3, 5 and 6.)

---

[4]  This omission may be due to the fact that Counselor Edinger submitted a declaration in which he attested that he never witnessed Lieutenant Hepner grab Landor's genitals or threaten him.  (Doc. 39, Ex. 4, Edinger Decl.)  Counselor Edinger has repeated this declaration in support of the pending motion.  (Doc. 77, Ex. 1, Attach. 4, Edinger Decl.)

These records also show that in accordance with BOP policy, a medical staff member accompanied the use of force team on July 5, 2010, and conducted an initial assessment of Landor after the restraints were applied. (Doc. 77, Ex. 1, Attach. 2, Medical Restraints Checks at 10; Attach. 8, Medical Record at 404-405; Ex. 2, Attach. 1, Use of Force Video.) The medical staff member's report from that day reads, "Inmate ambulatory in D-Block from 2nd floor to 1st floor without difficulty escorted by use of force team. Inmate placed in cell #118." (Doc. 77, Ex. 1, Attach. 8, Medical Record at 404.) This same report indicate that the restraints had been appropriately applied, and there was no sign of vascular compromise. (Id.) On the Health Services Restraints Check Form, Landor's circulation and overall health were said to be good, and it was noted that Landor had not voiced any complaints. (Def. SMF ¶ 49; Doc. 77, Ex. 1, Attach. 2, Medical Restraints Check, 10.)

Medical staff checked Landor twice each eight-hour shift and recorded the observations made during these cell visits, on each occasion noting that Landor had no injuries, that his circulation was intact or normal, and that food had been provided to the inmate. (Doc. 77, Ex. 1, Cunningham Decl., ¶ 5; Attach. 2, Medical Assessment Forms.) These medical records reflect that between July 5, 2010, at 1:38 p.m., and July 10, 2010, at 4:00 p.m., medical staff checked Landor 33 times, and Landor never reported even one medical complaint, or reported injury or pain in his

groin. (Doc. 77, Ex. 1, Cunningham Decl., ¶ 8; Attach. 8 at 318-406.) The same records do not contain any reference to Landor claiming Defendant Hepner kneed him in the groin or grabbed his testicles, and staff never observed Landor to be in pain or distress during this time. (Id.)

In addition, and in compliance with BOP policy, a lieutenant performed a restraints check on Landor every two hours between July 5, 2010, and July 10, 2010, and recorded their observations on the Two-Hour Lieutenant Restraints Check form. (Doc. 77, Ex. 1, Cunningham Decl., ¶ 6; Attach. 3, Two-Hour Restraints Check Forms.) These forms indicate that lieutenants observed Landor used the bathroom on 17 separate occasions while in restraints, and that he remained agitated, verbally aggressive, and non-compliant. (Id.)

Lieutenant Hepner first checked Landor's restraints at approximately 2:00 p.m. on July 5, 2010. (Doc. 77, Ex. 1, Attach. 9, Hepner Decl., ¶ 4; Attach. 3, Two-Hour Lieutenant Restraints Check Forms.) During this initial check, Defendant Hepner wrote that "Inmate is very agitated and verbally aggressive. Stated 'you gonna get me out of these things bitch.' Has not regained self control." (Id.) Following this check, Defendant Hepner continued Landor in restraints because he had not regained self control. (Id.)

Psychology services also evaluated Landor on four occasions while he was in restraints, and recorded their observations on the Psychology Services Restraint Form (24-hours), and observed that Landor did not appear to be mentally ill. (Doc. 77, Ex. 1, Cunningham Decl., ¶ 10; Attach. 6, Psychology Services Restraint Forms.)

Aside from these reports issued during the period when Landor was in restraints, Defendant Hepner has also submitted Landor's prison medical records, which demonstrate that over the past year, medical staff have treated Landor for multiple health issues, including epileptic seizures, skin and scalp conditions, allergies, and depression. (Doc. 77, Ex. 1, Cunningham Decl., ¶ 8; Attach. 8, Medical Record.) Landor's medical record with BOP also contains no evidence or suggestion that Landor sustained an injury to his groin or testicles on July 5, 2010. (Id. ¶ 46-54, 70-84.) However, on September 27, 2010, Landor submitted a "copout" to medical staff in which he complained that pus was coming out of his penis. (Id. ¶ 71.) Medical staff responded to this complaint the following day, and instructed Landor to be more specific about his complaint, and to explain what happened. (Id. ¶ 72.)

On September 28, 2010, Landor submitted another "copout" to medical staff in which he stated:

> I have been complaining on suffering with my medical problems. On July 5, 2010, Lt. Hepner, knee me in the groin area. Ever since then I been having pus coming out of my penis. I shown PA Navarro, and my

new PA Almo how ever you spell his name. When I use the bathroom it show up, and sometime when I wake up my penis head and boxer be all sticky. When the incident first happen it use to hurt like crazy. Now sometime pain come and go as when of my nuts just will move up on it own, that when the pain come in. I try my best to avoid that pain right there, I have to pull it down to make it stop.

(SMF ¶ 73.) Ferdinand N. Alama, MLP, recorded on Landor's September 28, 2010 "copout", "9/30/10 Seen on rounds." (Id. ¶ 74.)

BOP records also contain a "Clinical Encounter - Administrative Note" entered by Ferdinand Alama on September 30, 2010, which states, "Inmate is not in pain nor showing signs of discomfort. . . . He agreed to work up with urinalysis when available." (Id. ¶ 75.) However, Landor subsequently refused to undergo blood work and urinalysis when it was offered to him on October 21, 2010. (Id. ¶ 76.)

On January 19, 2011, Landor reported to USP-Lewisburg's Clinical Director, Kevin Pigos, M.D., who noted that Landor had complained of having pain in his testicles since June 2010. Dr. Pigos assessed the complaint as unspecified, and ordered urine and radiology tests. (Id. ¶¶ 78-80.) On February 1, 2011, the Utilization Review Committee for USP-Lewisburg Health Services approved the request for Landor to undergo a radiological test for his testicular pain. (Id. ¶ 80.) Accordingly, on March 14, 2011, Landor underwent a scrotum duplex ultrasound, which revealed no significant abnormality. On April 4, 2011, Landor once again

refused to consent to blood work or to provide a urine sample.  (Id. ¶ 84.)  Thus, the

record indicates that Landor's medical concerns were addressed, and that on more

than one occasion Landor refused to accept the treatment and diagnostic procedures

made available to him.

## III.  **STANDARD OF REVIEW**

Defendants have filed a dispositive motion, seeking judgment in their favor

either through an order dismissing the amended complaint for failure to state a claim

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or through

summary judgment entered pursuant to Rule 56.  The standards governing each basis

for relief are summarized below.

### A.  **Motion to Dismiss - Rule 12(b)(6)**

Rule 12(b)(6) provides that a complaint should be dismissed for "failure to

state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  With

respect to this benchmark standard for assessing the legal sufficiency of a complaint,

the United States Court of Appeals for the Third Circuit has recently described the

evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in
> recent years. Beginning with the Supreme Court's opinion in Bell
> Atlantic Corp. v. Twombly, 550 U.S. 544 (12007) continuing with our
> opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir.

2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right

to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court recently underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level

of mere speculation. As the United States Court of Appeals for the Third Circuit has

stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First,
> the factual and legal elements of a claim should be separated. The
> District Court must accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions. Second, a District Court
> must then determine whether the facts alleged in the complaint are
> sufficient to show that the plaintiff has a "plausible claim for relief." In
> other words, a complaint must do more than allege the plaintiff's
> entitlement to relief. A complaint has to "show" such an entitlement
> with its facts.

Fowler, 578 F.3d at 210-11.

### B.    Summary Judgment - Rule 56

Federal courts are permitted to summarily adjudicate an action in order to

dispose of those claims that do not present a "genuine issue as to any material fact,"

Fed. R. Civ. P. 56, and for which a jury trial would therefore "be an empty and

unnecessary formality," Peynado v. Sabol, No. 09-355, 2010 U.S. Dist. LEXIS

134131, 2010 WL 5300563, at *2 (M.D. Pa. Dec. 20, 2010). Rule 56 specifically

provides that "[t]he judgment sought should be rendered if the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are

material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the

material facts.  Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 586 (1986).  In making this determination, the court must "consider all

evidence in the light most favorable to the party opposing the motion."  A.W. v.

Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

IV.    **DISCUSSION**

      A.    **The Favorable Termination Rule Bars Plaintiff's Claims That Defendant Hepner Unlawfully Removed Him From His Cell and Subjected Him to Ambulatory Restraints.**

As a threshold matter, to the extent that Landor seeks in this lawsuit to

indirectly challenge the outcome of his prison disciplinary hearing, the plaintiff's

claims that the defendants unlawfully authorized, assembled, and utilized a use of

force team to remove Landor from his cell in D-Block at USP-Lewisburg should be

dismissed because the Disciplinary Hearing Officer at USP-Lewisburg found Landor

guilty of the violations of blocking a locking device and refusing to obey an order,

and Landor has not shown that this decision has terminated in his favor.  As

explained below, the favorable termination rule clearly applies in this case, and bars

at least some of Landor's claims.

In Heck v. Humphrey, 512 U.S. 477 (1994), the United States Supreme Court

held that a prisoner cannot maintain a cause of action under 42 U.S.C. § 1983 for

alleged civil rights violations where success in the lawsuit would effectively

invalidate the prisoner's underlying conviction and sentence. 512 U.S. at 486-87.

Instead, before a prisoner can bring such an action, he must prove that the conviction

or sentence has been reversed, invalidated, or called into question by the grant of

federal habeas corpus relief. Id. In Heck, the court found that the inmate's suit,

which alleged that his conviction had been obtained through unlawful investigatory

practices and the destruction of exculpatory evidence, could not go forward because

it was, effectively, an impermissible collateral attack upon his conviction and

sentence and could result in irreconcilable conflict between the prisoner's civil and

criminal proceedings. Id. at 484-86; see also Wilkinson v. Dotson, 544 U.S. 74, 81-

82 (2005) ("A state prisoner's § 1983 action is barred (absent prior invalidation) – no

matter the relief sought (damages or equitable relief), no matter the target of the

prisoner's suit (state conduct leading to conviction or internal prison proceedings) –

if success in that action would necessarily demonstrate the invalidity of the

confinement or its duration."). The favorable termination rule is not only applicable

to lawsuits by prisoners whose civil suits would invalidate their convictions and

sentences in court, but also to lawsuits by prisoners whose claims could call into

question the validity of prison disciplinary proceedings. Edwards v. Balisok, 520

U.S. 641, 643 (1997) (prisoner was barred from seeking damages and declaratory

relief for alleged procedural defects in prison disciplinary proceedings because

prevailing on his claim that the disciplinary officer was biased "would, if established, necessarily imply the invalidity of the deprivation of [the inmate's] good time credits.").[5]

In this case, Landor has claimed, *inter alia*, that Lieutenant Hepner unlawfully authorized, assembled, and utilized a use of force team to remove him from his cell in D-Block at USP-Lewisburg. However, the Disciplinary Hearing Officer previously found Landor guilty of blocking a locking device and refusing to obey an order, and imposed sanctions on him for these violations. In making his findings and imposing discipline, the DHO considered and rejected Landor's version of the incident, which Landor attempts to repeat in this lawsuit. Thus, were Landor to prevail on his claims that authorizing, and using, a use of force team to remove him from his cell on July 5, 2010, was unlawful, he would necessarily implicate and call into question the validity of the DHO's finding that Landor was guilty of the very violations that caused Lieutenant Hepner to seek permission to utilize a use of force team, and that caused defendant Bledsoe to authorize its use with respect to Landor. <u>Heck</u> and <u>Edwards</u> make clear that such claims are impermissible. Because these claims are

---

[5] The favorable termination rule is applicable to <u>Bivens</u> claims as well as to civil rights actions brought against state actors under 42 U.S.C. § 1983. <u>See</u> <u>Lora-Pena v. Federal Bureau of Investigation</u>, 529 F.3d 503, 506 n.2 (3d Cir. 2008) (citations omitted).

plainly barred by Heck and Edwards, the Court should dismiss Landor's claims against defendant Hepner for authorizing a use of force team to remove him from his cell and place him in ambulatory restraints.

**B. Plaintiff Has Failed to Support His Claims That Defendant Hepner Violated His Eighth Amendment Rights.**

Landor's complaint initially made allegations against defendant Hepner with some factual specificity. The real gravamen of this action appears to be Landor's allegation that Lieutenant Hepner violated his Eighth Amendment rights by utilizing a use of force team to remove him from his cell, causing him to be placed in ambulatory restraints, and assaulting him. However, having made these allegations, and after defendant Hepner has submitted evidence placing these facts in substantial doubt, Landor now has utterly failed to support his claims, even when confronted with the detailed proof amassed by defendant Hepner challenging and refuting these claims.

As we have previously observed for Landor, in a summary judgment setting a plaintiff must do more than simply ignore his obligation to substantively respond to defendant Hepner. In this context, the moving party– defendant Hepner–has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-

46 (3d Cir. 2004). We find that defendant Hepner's pleadings, declarations and exhibits have carried this initial burden.

Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." <u>Countryside Oil Co., Inc. v. Travelers Ins. Co.</u>, 928 F.Supp. 474, 482 (D.N.J.1995). This rule applies with particular force to parties who attempt to rely upon hearsay statements to establish material issues of fact which would preclude summary judgment. With respect to such claims, it is well-settled that: "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial." <u>Shelton v. University of Medicine & Dentistry of N.J.</u>, 223 F.3d 220, 223, n.2 (3d Cir. 2000), citing <u>Stelwagon Mfg. v. Tarmac Roofing Sys., Inc</u>., 63 F.3d 1267, 1275, n.17 (3d Cir. 1995). In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a court may only consider evidence which is admissible at trial, and that a party can not rely on hearsay evidence when opposing a motion for summary judgment. <u>See</u> <u>Buttice v. G.D. Searle & Co.</u>, 938 F.Supp. 561 (E.D.Mo.1996). Additionally, a party must respond to a hearsay objection by demonstrating that the material would be admissible at trial under an exception to hearsay rule, or that the material is not hearsay. <u>See</u> <u>Burgess v. Allstate Ins. Co.</u>, 334 F.Supp.2d 1351 (N.D.Ga.2003). The mere possibility that a hearsay statement will be admissible at trial, does not permit its consideration at the summary judgment stage. <u>Henry v. Colonial Baking Co. of Dothan</u>, 952 F.Supp. 744 (M.D.Ala.1996).

Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005). Thus, a party may not rely upon inadmissible hearsay assertions to avoid summary judgment. Therefore, where a party simply presents inadmissible hearsay declarations in an attempt to establish a disputed material issue of fact, courts have typically rebuffed these efforts and held instead that summary judgment is appropriate. See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007); Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc., 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple Univ., 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to

rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)). In particular, a plaintiff cannot avoid summary judgment by simply relying upon a self-declaration that he has authored which relies not on evidence, but on the plaintiff's own interpretation of events and, essentially, opinion testimony. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) (the nonmoving party may not defeat a properly supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with the conclusory allegations of an affidavit."); Iseley v. Beard, No. 02-2006, 2009 U.S. Dist. LEXIS 52014, *32 (M.D. Pa. Mar. 30, 2010) (conclusory allegations contradicted by documentary evidence cannot be accepted as true).

By failing to respond in any substantive way to defendant Hepner's claims, Landor has plainly failed to meet the burden placed upon him by Rule 56. He has failed in this regard despite having been provided numerous opportunities to file a substantive response. Therefore, on the current record, Landor's allegations that Lieutenant Hepner used excessive force against him and subjected him to cruel and

unusual punishment are also properly subject to summary judgment because Landor has failed to support the claims with evidence.[6]

Indeed, with respect to Landor's claim that excessive force was used against him during his initial cell extraction, Landor invites us to ignore an immutable witness, the videotape of that cell extraction which entirely refutes his claims. This we cannot do. In an excessive force case, where "prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley[v. Albers, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). Thus, the keystone to analysis of an Eighth Amendment excessive force claim often entails issues of motivation–whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause

---

[6] In his responsive brief, Landor suggests that Defendant Hepner has not relied on admissible evidence, or has otherwise "not submitted an adequate factual case" to support his motion for summary judgment. (Doc. 91.) We disagree, and find that the motion for summary judgment is properly supported with citation to evidence in the record that the Court has been able to review and assess. In contrast, Landor has relied almost exclusively only his own allegations and argument, or otherwise on purported evidence that is inapposite. At this stage of the litigation, this is insufficient – something Landor has been advised about in our prior report and recommendation in which we concluded that a similarly supported motion for summary judgment compelled the dismissal of Landor's claims.

harm. <u>Hudson v. McMillian</u>, 503 U.S. 1, 6-7 (1992). However, the issue of whether excessive force was used is one which, in proper circumstances, can be determined as a matter of law. In such cases, summary judgment is appropriate when "it appears that the evidence, viewed in the light most favorable to the plaintiff, will [not] support a reliable inference of wantonness in the infliction of pain." <u>Brooks v. Kyler</u>, 204 F.3d 102, 106 (3d Cir. 2000) (quoting <u>Whitley</u>, 475 U.S. at 322). There are several factors that a court examines in determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, including: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" <u>Id.</u> at 106.

When considering such claims, the reasonableness of a particular use of force is often dependent upon factual context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Graham v. Connor</u>, 490 U.S. 386, 396-7 (1989). Moreover, in the context of prison excessive force claims, in determining "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm,"

Hudson v. McMillian, 503 U.S. 1, 6-7 (1992), "even if we concede [that an inmate] has established at most that prison officials over-reacted to the disturbance that he caused. . . , any such over-reaction would still fall short of supporting a finding that prison officials acted 'maliciously and sadistically to cause harm.'" Fuentes v. Wagner, 206 F.3d 335, 346 (3d Cir. 2000). Moreover, in assessing such claims in a case where an encounter is captured on videotape we are mindful of the fact that when "videotape refutes [an inmate's] assertion that defendant[s] used excessive force," or when the "video shows that [an inmate] did not suffer any physical distress, and a medical report indicates that he had no visible swelling or injuries," we should conclude "viewing the evidence in the light most favorable to [the inmate that], no reasonable finder of fact could view the video of the incident and determine that [defendants] acted maliciously and sadistically," and may enter summary judgment on an excessive force claim. Tindell v. Beard, 351 F. App'x 591, 596 (3d Cir. 2009).

Guided by these benchmarks, we conclude that the defendants are entitled to summary judgment in this case on Landor's Eighth Amendment excessive force claims stemming from his initial cell extraction since the immutable witnesses, the videotape evidence, plainly "refutes [Landor]'s assertion that defendant[s] used excessive force," and we conclude "viewing the evidence in the light most favorable to [the inmate that], no reasonable finder of fact could view the video of the incident

and determine that [defendants] acted maliciously and sadistically." <u>Tindell v. Beard</u>, 351 F. App'x 591, 596 (3d Cir. 2009).

Landor's other excessive force claims are equaling unsupported and unavailing. In what is perhaps his most serious allegations of misconduct, Landor has alleged that Lieutenant Hepner assaulted and injured him by kneeing him in the groin and grabbing his testicles, in addition to threatening him with more severe discipline if he did not comply with orders. Although Landor has lodged this allegation against Lieutenant Hepner in his amended complaint, he has utterly failed to substantiate the allegation through competent evidence as he is required to do at this stage of the proceedings. Landor's failure in this regard is set starkly against considerable evidence in the record that flatly discredits his claim. Thus, although Landor alleges that Hepner assaulted him, Lieutenant Hepner and a corrections counselor have provided sworn affidavits stating that Hepner did no such thing.

Additionally, in more than 30 medical assessments of Landor that were conducted immediately following his placement into ambulatory restraints on July 5, 2010, Landor never once claimed to have been assaulted or injured by Lieutenant Hepner. Likewise, Landor's allegations are not reflected in the more than 60 lieutenant checks that were conducted during the same five-day period, or in the more than 900 checks performed by various corrections officers, or in the four times when

36

Landor was seen by prison psychology staff, or in any of the extensive medical records that were compiled over the following year. In short, Landor has offered little other than his own allegations in the amended complaint, and his earlier pleadings, that Lieutenant Hepner assaulted him by kneeing him in the groin and grabbing his testicles.[7] Since "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument," Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986), in the absence of evidence

---

[7] In his responsive brief, Landor has included a section in which he outlines his opposition to defendant's statement of material facts. (Doc. 91.) Landor has supported this opposition statement with an administrative remedy response that addresses a complaint that Landor did not receive peanut butter as a soy alternative on his lunch tray on July 5, 2010; a document that is referred to as a "Physical Profile Sheet" purporting to highlight Landor's claimed injuries, but which defendant has represented is actually not part of Landor's prison medical file; and a copy of Program Statement 5566.06, Use of Force and Application of Restraints – a document that defendant also used as an exhibit in support of his motion for summary judgment. (Id.) We do not find this collection of documents is particularly relevant, much less sufficient to create a genuine disputed issue of material fact, and it stands in stark contrast to the voluminous materials submitted in support of the pending motion. In particular we note that Landor cannot create a genuine issue of material fact by manufacturing a document, a "Physical Profile Sheet", which appears to be a prison medical record but, in fact, is not. See Davis v. Home Depot U.S.A., Inc., CIV. PJM 09-162, 2010 WL 1245775 (D. Md. Mar. 26, 2010)(summary judgment and sanctions granted where party submitted false documents to contest summary judgment motion).

to support this claim, and in the face of the substantial evidence that discredits or fails to offer any support for this allegation, we find that the claim is properly subject to summary judgment.

In addition, to the extent that Landor is alleging that Lieutenant Hepner violated the Eighth Amendment by authorizing an unnecessary use of force procedure, the record does not support this claim. Instead, the evidence indicates that Warden Bledsoe authorized the use of force procedure in response to reports that Landor was blocking his food tray and refusing orders to remove his arm. Thus, Warden Bledsoe authorized this calculated use of force, not Lieutenant Hepner, and Landor's claims against Lieutenant Hepner for this action should be dismissed.

In the amended complaint, Landor also claims that Lieutenant Hepner initially ordered the use of force team to apply the ambulatory restraints with unnecessary tightness. This allegation not only lacks any evidentiary support in the record, but is further discredited by the fact that defendant Hepner and a member of the medical staff of the prison checked the restraints after they were applied and the medical personnel confirmed that the restraints were not applied so tight that they could cause harm. In the specific factual context of excessive force claims based upon allegations that a prisoner's handcuffs were too tight courts have acknowledged that, in certain instances, government officials are entitled to qualified immunity as a matter of law.

<u>Gilles v. Davis</u>, 427 F.3d. 197, 207 (3d Cir. 2005). With respect to these particular excessive force claims, the test for qualified immunity can be simply stated: "In these cases, summary judgment for an officer who claims qualified immunity is appropriate where, 'after resolving all factual disputes in favor of the plaintiff, [ ] the officer's use of force was objectively reasonable under the circumstances.' " <u>Id.</u> Given the lack of evidence in support of Landor's claim, and considering the undisputed evidence that thoroughly undermines the allegation, we conclude that defendant Hepner is entitled to judgment in their favor on this particular claim.

Likewise, we find that Landor has failed to support his claim that defendant Hepner violated the Eighth Amendment by placing him in an unsanitary cell, which Landor alleged was marked by human waste on the walls, floor, toilet, and sink that was easily visible. As with his other claims, Landor has nothing other than his own bald allegation in support of this claim, and defendant Hepner have submitted evidence to demonstrate that the spots that were visible throughout Landor's cell were caused by flaking paint, not human waste. (SMF ¶¶ 93-96.) This undisputed evidence includes the video taken by the use of force team, a declaration from the camera operator who filmed the cell transfer, and photographs of cell 118. Given the evidence discrediting Landor's claim, and the fact that the plaintiff has offered no evidence to

substantiate his allegations, we conclude that defendant Hepner are entitled to summary judgment on this aspect of Landor's amended complaint.

Finally, Landor alleges that the defendants violated his Eighth Amendment rights by placing him in cell 118, which he claims was unreasonably hot, and that the use of force team refused to open a window for him. Regardless of whether this very thin claim could even survive a motion to dismiss, at this point in the litigation Landor's failure to submit any evidence to support this allegation is fatal to his ability to proceed, and summary judgment is warranted. As with Landor's other claims, we find that the undisputed evidence in the record fails to support his claims, and defendants have presented evidence demonstrating that they are entitled to judgment in their favor.

We do observe that Landor had previously submitted an affidavit from an inmate named Muhammad Dye, which was an attachment to the prior amended complaint. (Doc. 29, Attach.) Dye was an inmate who was housed in cell 118 for a brief period from approximately 11:30 p.m. on July 6, 2010, until approximately 12:30 p.m. July 7, 2010. Although the general declarations contained in the affidavit lend very limited support for the plaintiff's claims, the evidence shows that Dye was present in cell 118 for a period of only 13 hours – in contrast to his claim that he was in the cell for two days – and was not present when Landor was first taken to cell 118,

and thus was not present when Landor alleges that Lieutenant Hepner assaulted him. Dye's affidavit also stands in stark contrast to the more detailed and extensive medical reports and restraint checks that thoroughly undermine Landor's claims, and by, extension, Dye's own general representations. Indeed, in this regard, we find that Dye's declaration is, in reality, nothing more than the "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which] do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Although we will not weigh evidence when reviewing a motion for summary judgment, it is also well established that a mere scintilla of evidence in a plaintiff's favor is insufficient to survive a properly supported motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.") This case is emblematic of this rule: Landor has submitted a spare affidavit from an inmate who was celled with him for a period of just over half a day, who was not present during critical periods at issue in the case, and whose very general representations stand in dramatic contrast to the overwhelming evidence against Landor's claims. Given Landor's failure to make any response to the defendants' motion for summary judgment, or to the evidence offered in support thereof; and given the very limited

evidentiary value of Dye's affidavit, we conclude that it is plainly insufficient on its own to permit Landor's claims to go forward because no reasonable jury could find in Landor's favor on the basis of this evidence alone. As this is the only piece of evidence we can discern that provides even a modicum of support for Landor's claims, we find that it is inadequate to allow the plaintiff to move past summary judgment in this case.

In our prior report and recommendation, we found that Landor's claims against Lieutenant Hepner should be dismissed, but we recommended that Landor be given one final opportunity to substantiate his claims and to address the deficiencies that we had outlined in our report. Despite being given another opportunity to further litigate his claims against Lieutenant Hepner, Landor has been unable to come forward with an evidentiary showing sufficient to create a genuine disputed issue of material fact regarding any of his claims against this corrections official, and we, therefore, recommend that the Court grant Lieutenant Hepner's motion for summary judgment, enter judgment in his favor, and close this case.

## VI.    **RECOMMENDATION**

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED THAT defendant's motion to dismiss or, in the alternative, for summary judgment

(Doc. 76) be GRANTED, summary judgment be entered in defendant Hepner's favor,

and the case dismissed with prejudice.

> The parties are further placed on notice that pursuant to Local Rule 72.3: Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 11th day of December 2012.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge